Andrea S. Carone, ISB No. 10344
andrea.carone@stoel.com
Wendy J. Olson, ISB No. 7634
wendy.olson@stoel.com
E. Anders Pedersen, ISB No. 11626
anders.pedersen@stoel.com
Audrey G. Scholer, ISB No. 11275
audrey.scholer@stoel.com
STOEL RIVES LLP
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

*Attorneys for Plaintiffs Le Soleil Child Care LLC,*
*Jessica Duvall, Samatha Todd, and Leslie Sedlacek*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LE SOLEIL CHILD CARE LLC, an Idaho limited liability company, JESSICA DUVALL, an individual, LESLIE SEDLACEK, an individual, SAMANTHA TODD, an individual,<br><br>     Plaintiffs,<br><br>  v.<br><br>RAÚL LABRADOR, in his official capacity as the Attorney General for the State of Idaho, JAN BENNETTS, in her official capacity as Prosecuting Attorney for Ada County,<br><br>     Defendants. | Case No. 1:25-cv-695<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COME NOW Plaintiffs Le Soleil Child Care LLC, Jessica Duvall, Samantha Todd, and

Leslie Sedlacek ("Plaintiffs") by and through their counsel of record, Stoel Rives LLP, and for

causes of action and claims for relief against Defendants Raúl Labrador and Jan Bennetts, in their

official capacities, complain and allege as follows.

COMPLAINT - 1
151350656.1 0099880-01574

## I.     INTRODUCTION

The recently enacted Idaho Medical Freedom Act ("IMFA"), codified at Idaho Code § 73-501, *et seq.*, imposes sweeping restrictions on private daycares, stripping them of the ability to implement basic health and safety measures. By prohibiting private daycares from requiring any "medical intervention" as a condition of attendance or employment, the IMFA forbids common-sense illness policies such as sending home children with fevers or requiring treatment for contagious conditions, and prevents private daycares from requiring routine childhood immunizations.

The IMFA is unconstitutional. It infringes on the fundamental rights of parents, including Plaintiffs Jessica Duvall, Leslie Sedlacek, and Samantha Todd ("Plaintiff Parents"), to direct the upbringing, socialization, and education of their children by choosing a childcare environment that prioritizes health and safety. It violates the due process right of private daycares like Plaintiff Le Soleil Child Care LLC ("Plaintiff Le Soleil") to operate their businesses free from irrational government interference. And it violates Plaintiffs' First Amendment rights to expressive association by prohibiting Plaintiff Le Soleil from operating a childcare community grounded in shared principles of public health and preventing Plaintiff Parents from enrolling their children in such a community.

Plaintiffs bring this action to protect their constitutional rights and prevent irreparable harm. They seek declaratory and injunctive relief to ensure that Plaintiff Le Soleil can resume implementing reasonable measures to protect children and staff from preventable illness and disease; restore Plaintiff Parents' fundamental right to direct the upbringing and education of their children; and end the ongoing violation of all Plaintiffs' First Amendment rights.

## II.     PARTIES

1.     Plaintiff Le Soleil is a corporation duly organized and existing under the laws of

the state of Idaho and registered to do business in Idaho, and at all times herein mentioned, was doing business in Ada County, Idaho. Le Soleil is a business subject to Idaho Code chapter 11, title 39.

2.     Plaintiff Jessica Duvall is an individual who resides in Boise, Idaho. She is the mother of two minor children, ages three and four months. She plans to send her younger child, R.B., to Le Soleil daycare after she returns to work following parental leave.

3.     Plaintiff Leslie Sedlacek is an individual who resides in Boise, Idaho. She is the mother of two minor children, ages two and four. Her two-year-old child, A.S., attends daycare at Le Soleil daycare.

4.     Plaintiff Samantha Todd is an individual who resides in Boise, Idaho. She is the mother of two minor children, ages four and one. Her younger child, A.T., attends daycare at Le Soleil.

5.     Defendant Raúl Labrador is the Attorney General for the State of Idaho. He is sued in his official capacity only, as the state's Attorney General, a position in which he acts under color of law to enforce I.C. § 73-501, *et seq. See* I.C. § 73-503(10).

6.     Defendant Jan Bennetts is the Ada County Prosecuting Attorney. She is sued in her official capacity only, as the county prosecuting attorney for the county in which Plaintiffs are located and in which she acts under color of law to enforce I.C. § 73-501, *et seq. See* I.C. § 73-503(10).

### III.    JURISDICTION AND VENUE

7.     Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343. This is an action to enforce civil and constitutional rights pursuant to 42 U.S.C. § 1983 and the United States Constitution.

8.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367(a) as they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

9.     This Court has authority to award the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202, and 1343, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of the Court.

10.     Venue is appropriate under 28 U.S.C. § 1391(b) because Defendants engage in their official duties within this District and because the acts or omissions giving rise to this action arose from events occurring within this District

## IV.     GENERAL FACTS

### a.     Idaho Medical Freedom Act

11.     On May 4, 2025 the Idaho Legislature passed Senate Bill 1210, which was signed into law by Governor Brad Little the same day. Senate Bill 1210 is titled the Idaho Medical Freedom Act and imposes broad limits on businesses' rights to implement public health measures for the safety of patrons and employees.

12.     The IMFA provides that its provisions "may be enforced and injunctive relief may be pursued by either the attorney general or the prosecuting attorney for the county where a violation occurs." I.C. § 73-503.

13.     The law took effect on July 1, 2025.

14.     The IMFA provides that "[a] school operating in the state or a business subject to chapter 11, title 39, Idaho code, operating in the state [*i.e.,* a daycare] shall not mandate a medical intervention for any person to attend, enter campus or buildings or be employed…." I.C. § 73-503(4).

15.     "Medical intervention" is defined broadly to mean "a medical procedure, treatment, device, drug, injection, medication, or medical action taken to diagnose, prevent, or cure a disease

or alter the health or biological function of a person." I.C. § 73-502(3).

16.    It is unclear what, if any, health-related action could fall outside the scope of this definition. In particular, any "medical action taken" to "prevent[] or cure a disease or alter the health or biological function of a person" by its terms sweeps up even the most commonplace medical actions, like excluding a sick person until no longer contagious or even requiring basic standards of hygiene like employee handwashing.

**b.    The IMFA Infringes the Rights of Private Businesses by Preventing Daycares from Sending Home Sick Children and Staff**

17.    The IMFA improperly infringes on the rights of daycares as private businesses.

18.    Le Soleil is a Boise daycare that provides full-time childcare for children ages six weeks to approximately three years old.

19.    Le Soleil is a "a business subject to chapter 11, title 39, Idaho code" and is subject to the provisions of the IMFA.

20.    Le Soleil's mission is to provide a high-quality, play-based education to young children in an environment that encourages curiosity, problem solving, and autonomy.

21.    Le Soleil has always taken the health and safety of its enrolled families and staff very seriously.

22.    For the safety of the school community, prior to the enactment of the IMFA, Le Soleil required that students be up to date on the Idaho immunization schedule. It did not accept exemptions to this policy.

23.    Le Soleil also required that children remain home if they exhibited certain symptoms of contagious illness. For example, Le Soleil required that:

i.    Children with a fever over 100.4 degrees stay home for at least 24 hours after a normal temperature was achieved without fever-reducing medications.

    ii.  Children with head lice remain home until after treatment and removal of all nits.

   iii.  Children with infectious skin or eye conditions, such as ringworm, impetigo, or pink eye were required to remain home until 24 hours after antibiotic treatment was begun.

24.    These policies fall into the broad definition of "medical intervention" under the IMFA and therefore, under the plain language of the statute, can no longer be lawfully implemented by a daycare.

25.    The legislative history of the IMFA confirms this interpretation. A previous version of the IMFA, Senate Bill 1023aa, was vetoed by Governor Little on March 29, 2025.

26.    Governor Little's transmittal letter reasoned that the "bill removes parents' freedom to ensure their children stay healthy at school because it jeopardizes the ability of schools to send home sick students with highly contagious conditions including measles, lice, ringworm, pink eye, strep throat, stomach viruses, the flu, and other illnesses that disrupt families' lives."

27.    The Governor's letter concluded: "Parents already have enough to worry about while raising their children. They do not need government imposing more limitations on keeping children safe and healthy from contagious illnesses at school."

28.    Senate Bill 1210 responded to the Governor's veto by providing "private and parochial schools" with "the same authority as school districts under section 33-512(7), Idaho Code." That section permits school districts "[t]o exclude from school pupils with contagious or infectious diseases who are diagnosed or suspected as having a contagious or infectious disease or those who are not immune and have been exposed to a contagious or infectious disease[.]"

29.    The IMFA extended this authority only to "schools" that, by its own definitions,

does not include daycares.

30.     I.C. § 73-502(4) defines "school" to mean "any public, private, or parochial preschool; any kindergarten, elementary, or secondary school; any post secondary institute of education, including trade schools, colleges, and universities; or any other institute of primary, secondary, or higher learning in this state." Daycares are not included.

31.     That daycares are not included in the definition of "school" is underscored by I.C. § 73-503(4), which explicitly carves out daycares into a separate category: "A school operating in the state *or a business subject to chapter 11, title 39, Idaho Code, operating in the state* shall not mandate a medical intervention for any person to attend, enter campus or buildings, or be employed…." I.C. § 73-502(4) (emphasis added).

32.     Since the IMFA took effect on July 1, 2025, daycares are no longer able to send home sick children or require treatment of contagious or infectious diseases prior to their return to school.

33.     Daycares are not able to send home children with head lice, pink eye, or ringworm. Nor are they able to require that children who are running fevers or vomiting be sent home for treatment and rest before returning to the daycare.

34.     The law also prevents businesses, like daycares, from sending home sick employees, which places children in their care at risk of catching infectious diseases from their caregivers.

35.     If daycares are forbidden from taking common-sense precautions to prevent the spread of illness and disease, they will likely be forced into frequent closures due to shortages of healthy staff.

36.     Parents could also expect their children to be sick more often due to daycares'

inability to exclude children with contagious illnesses. This will predictably require parents to take time off from their own work to care for their sick children and likely will result in parents themselves becoming sick more often.

37.    Government regulation of businesses must be rationally related to a legitimate government interest.

38.    The government can have no legitimate interest in preventing daycares from excluding children while they are sick with contagious illnesses.

39.    The government can have no legitimate interest in preventing businesses who provide childcare for infants and children from excluding employees while they are sick with contagious illnesses.

40.    Indeed, Le Soleil's previous illness policies were a direct result of government regulation. IDAPA 16.02.10.080.03 bars (or rather, barred prior to the IMFA) children from attending a daycare facility while certain diseases are in communicable form and IDAPA 16.02.10.050 requires prompt reporting of the disease to the public health authorities.

41.    Moreover, in the IMFA itself the legislature provided exceptions for other educational businesses, including preschools, to exclude sick children, but failed to extend those exceptions to daycares.

42.    Even if the government could articulate a legitimate interest in preventing daycares from implementing basic illness policies, the IMFA's broad and indiscriminate approach is not rationally related to that interest.

**c.    The IMFA Infringes Parents' Fundamental Rights to Direct Their Children's Upbringing, Socialization, and Education**

43.    Many parents seek out daycares that will keep their children as healthy as possible by taking steps to control the spread of illness.

44.     As detailed above, the IMFA now prohibits daycares from taking such steps.

45.     Many parents also seek out daycares that require every child to be vaccinated to attend, because it provides the highest level of protection for their children.

46.     But the IMFA also now prohibits daycares from requiring vaccination as a condition of attendance.

47.     Immunization requirements are particularly important for parents of infants, for whom certain vaccines, like the Measles, Mumps, and Rubella ("MMR") vaccine, are not indicated until six months or 12 months of age.

48.     Prior to the IMFA, daycares and preschools could choose whether to require or not require children to be vaccinated to attend.

49.     Daycares and preschools are required by law to collect immunization data from parents, but parents can also claim an exemption from this requirement for medical, religious or "other grounds." I.C. § 39-1118(2).

50.     Because of this personal/philosophical exemption ("other grounds"), daycares have always been free to choose to enroll unvaccinated children.

51.     On information and belief based on a search of publicly accessible webpages, prior to the IMFA's enactment, many daycares in Ada County permitted students to enroll without childhood immunizations under one of the statutory exemptions. For example:

    i.   "We do not require vaccinations[.]"[1]

    ii.   "We accept personal, religious, and medical vaccine exemptions."[2]

---

[1] Little Sprouts of Idaho Childcare, FAQS, https://www.littlesproutsidaho.com/faq (last visited Dec. 3, 2025).
[2] Happy Hearts Learning Center, https://www.happyheartslearningcenter.org/ (last visited Dec. 3, 2025).

iii. "Exemptions from vaccination requirements are only permitted when allowed by the local governmental agency."[3]

52.     At the same time, because the exemptions under I.C. § 39-1118 applied to parents and their minor children, and not to daycares, other daycares were free to set their own standards for enrollment, including up to requiring certain vaccinations without exception.

53.     This framework allowed Idaho's childcare market to meet the needs of families with diverse viewpoints. For families who had personal, philosophical, or medical bases to choose *not* to vaccinate their children, they could seek out daycares that did not require vaccination.

54.     On the other hand, for families who had personal, philosophical, or medical bases to send their children to daycares that required full vaccination—for example, concerns about infectious disease or an immune-compromised family member at home—other daycares existed to serve those needs too.

55.     Since the IMFA has taken effect, however, no daycare in the state of Idaho is able to require vaccinations. The former group of families will continue to have childcare options that fit their needs. The latter group of families will not be able to find a suitable childcare center as a matter of law.

56.     No parent who enrolls their child in daycare in Idaho can be certain that the staff or other children will be vaccinated against contagious or infectious diseases.

57.     Moreover, the IMFA takes away daycares' last remaining defense against severe disease outbreaks. Previously, I.C. § 39-1118(4) provided that "[a] child exempt from the provisions of this section … may be excluded by the department in the event of a disease outbreak."

---

[3] The Learning Experience, FAQs, https://thelearningexperience.com/faq/ (last visited Dec. 3, 2025).

But the IMFA revokes that authority, providing in no uncertain terms: "Notwithstanding any other provision of law to the contrary, under no circumstance may a healthy person be excluded in a disease outbreak due to such person's vaccination status." I.C. § 73-503(12).

58.    The IMFA takes away parents' rights to choose to send their children to a daycare that requires all children to be vaccinated or takes precautions to prevent disease outbreaks.

59.    Parents can no longer seek out safer environments for their vulnerable young children, particularly for newborns and infants under 12 months of age.

**i.    Measles Risk for Young Children**

60.    The right of parents to direct their children's upbringing and education by sending them to a daycare that requires vaccination is fundamental. Measles provides an illustrative example of the seriousness of the governmental interference with parents' rights to protect their children.

61.    Measles outbreaks are on the rise nationally—as of the date of this filing, the CDC reports 1,828 cases have been confirmed in 2025. This already represents a 550% increase from the 265 cases of measles recorded for the entire year of 2024.[4]

62.    Three children have died this year from measles.

63.    According to the CDC, two doses of MMR vaccine are 97% effective at preventing measles, and one dose is 93% effective. Breakthrough infections, when someone becomes infected after they have been vaccinated, can occur, especially in communities experiencing an outbreak where high levels of measles virus are circulating.[5]

64.    Measles presents a particularly worrisome risk for parents of daycare-aged infants.

65.    Children are generally not vaccinated with the MMR vaccine until 12 months of

---

[4] CDC, Measles (Rubeola), Measles Cases and Outbreaks (Dec. 3, 2025).
[5] *Id*.

age.

66.    Many infants begin childcare before six months of age.

67.    During that time, infants are vulnerable to infection of measles.

68.    Measles is extraordinarily contagious. It can linger in the air for up to two hours after the person carrying it has left.[6]

69.    Ninety percent of non-immune people (like infants too young for vaccination) exposed to a person infected with measles will become infected with the disease.[7]

70.    Nearly one out of every three children under the age of five who catches measles will be hospitalized.[8]

71.    As many as one out of every 20 children with measles gets pneumonia, the most common cause of death.[9]

72.    About one child out of every 1,000 who gets measles will develop encephalitis (swelling of the brain) that can cause convulsions and leave the child deaf or with an intellectual disability.[10]

73.    Between one and three out of every 1,000 children who become infected with measles will die from respiratory and neurologic complications.[11]

74.    Children who contract measles before they are two years of age may be at higher risk for a rare but fatal disease called subacute sclerosing panencephalitis, which develops many

---

[6] Emily Baumgaertner Nunn and Marco Hernandez, How Measles Attacks an Unvaccinated Child, The New York Times (Apr. 5, 2025).

[7] CDC, Measles (Rubeola), How Measles Spreads (Apr. 18, 2024).

[8] Sean T. O'Leary, Protecting Your Baby From a Measles Outbreak: FAQs, HealthyChildren.org (May 9, 2025).

[9] CDC, Measles (Rubeola), Measles Symptoms and Complications (May 9, 2024).

[10] Id.

[11] Id.

years after a measles infection.[12]

75.    Parents of children too young to receive the MMR vaccine are advised to limit babies' exposure to other people and public areas where infected people might have visited.[13]

76.    The IMFA means that no daycare in the state will be able to limit babies' exposure to infected people. Based on the statistics above, if a single unvaccinated toddler became sick with measles, came to daycare,[14] and interacted with an infant class of 10 babies, their parents would have to expect nine of those babies to contract measles and at least three of them to be hospitalized. Parents have a fundamental right to protect their children from environments that pose these kinds of health risks. Especially when a safe and effective vaccine exists to prevent such outbreaks. And especially when the choice to vaccinate one's children and attend a daycare that requires vaccination is entirely voluntary.

**d.    IMFA Infringes Parents' Fundamental Rights to Protect Their Children and Rights of Expressive Association**

77.    As vividly illustrated above, for parents who need to send their children to childcare, the best way to protect them from measles and other vaccine-preventable illnesses is to seek out a daycare that requires all children to receive age-appropriate immunizations to attend and that takes common-sense precautions to prevent disease, like sending home children with contagious illnesses and excluding unvaccinated children in the event of a disease outbreak.

78.    This necessarily requires that parents have the freedom to associate, for purposes of childcare, with other parents who hold similar beliefs in the importance of public health and vaccination.

---

[12] *Id.*
[13] Children's Hospital of Philadelphia, Health Tip, Increased Measles Activity: How to Protect Your Family (Feb. 28, 2025).
[14] And of course, the IMFA would prevent the daycare from keeping the toddler home based on symptoms of contagious illness.

79.     It also requires that parents have the freedom to associate with daycares, like Le Soleil, that wish to provide this kind of environment and are empowered to do so by law.

80.     Idaho recognizes that parents have the duty and right "to nurture and direct their children's destiny, including their upbringing and education," I.C. § 32-1010(3), free from governmental interference. The Idaho Parental Rights Act ("IPRA") provides that the interest of parents in the care, custody and control of their children is "both implicit in the concept of ordered liberty and deeply rooted in our nation's history and tradition" and that parental rights are among the unalienable rights retained by the people under the Ninth Amendment to the United States Constitution.  I.C. § 32-1010(2).

81.     Governmental efforts that restrict or interfere with these fundamental parental rights "are only permitted if that restriction or interference satisfies the strict scrutiny standard provided in section 32-1013, Idaho Code." I.C. § 32-1010(6).

82.     Idaho Code § 32-1013 provides in relevant part:

> (1) Neither the state of Idaho, nor any political subdivision thereof, may violate a parent's fundamental and established rights protected by this act, and any restriction of or interference with such rights shall not be upheld unless it demonstrates by clear and convincing evidence that the restriction or interference is both:
>> (a) Essential to further a compelling governmental interest; and
>> (b) The least restrictive means available for the furthering of that compelling governmental interest.
> (2) The foregoing principles apply to any interference whether now existing or hereafter enacted.
> ….
> (4) When a parent's fundamental rights protected by this act are violated, a parent may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief against the governmental entity.

83.     Furthermore, the First Amendment guarantees the right of expressive association and the freedom to associate with others, which includes the freedom not to associate with others

if doing so would compromise the associating group's expression of beliefs.

84.    Parents have a fundamental right to raise their children according to their own values and to direct the upbringing and education of their children, all free from governmental interference.

85.    Many parents, like the Plaintiff Parents here, believe that it is vitally important for their young children to be protected from vaccine-preventable diseases.

86.    Plaintiffs know that vaccines have been proven to be safe and effective. And they do not wish to place their children's health or life at risk by exposing them to serious illnesses, many of which had (until recently) been long eradicated in the United States.

87.    Plaintiffs also have a fundamental right to associate with other parents who believe in the importance of vaccines and public health, and with childcare providers who share those views.

88.    The government, in enacting and enforcing the IMFA, is interfering with parents' fundamental rights to protect their children from preventable illness and to direct their education and upbringing. It forces parents to place their infants and children in environments where they will be exposed to unvaccinated classmates. Absent this government interference, parents would not be forced into these exposures.

89.    Prohibiting daycares statewide from serving these parents' interests is not essential to further a compelling governmental interest.

90.    And even if the government could articulate a compelling governmental interest in eliminating fully vaccinated private daycare facilities, it has not employed the least restrictive means to further such an interest.

## V.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (On Behalf of Le Soleil Against All Defendants)
### Violation of Due Process Under the Fourteenth Amendment of the U.S. Constitution

91.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

92.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

93.    Le Soleil has a right to operate its business, subject only to regulations that are rationally related to a legitimate government purpose. That right is protected by the due process clauses in the United States Constitution.

94.    The IMFA's requirement that daycares like Le Soleil "shall not mandate a medical intervention for any person to attend, enter campus or buildings, or be employed" prevents daycares from excluding students exhibiting symptoms of contagious diseases or taking common-sense precautions to stop the spread of infectious disease at daycares.

95.    This aspect of the IMFA effectively forces daycares to permit children to attend even when sick with infectious diseases that endanger the health of other children and staff.

96.    By forbidding daycares from excluding sick and contagious children, the IMFA impermissibly infringes on the rights of a private business to operate as it sees fit.

97.    Requiring that daycares permit sick children to attend will cause permanent and irreparable harm to the daycares' ability to operate their businesses, leading to higher expenses, frequent closures, and loss of business resulting from their inability to provide a safe, healthy environment for children.

98.    As applied to daycares, the IMFA's mandate that daycares may not require medical

interventions as a condition of attendance is not rationally related to a legitimate state interest.

99.    Accordingly, the IMFA violates Le Soleil's federal due process rights.

**SECOND CAUSE OF ACTION**
**(On Behalf of Le Soleil Against All Defendants)**
**Violation of Due Process Under the Idaho Constitution**

100.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

101.    Article I, Section 13 of the Idaho Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

102.    Le Soleil has a right to operate its business, subject only to regulations that are rationally related to a legitimate government purpose. That right is protected by the due process clauses in the Idaho Constitution.

103.    The IMFA's requirement that daycares like Le Soleil "shall not mandate a medical intervention for any person to attend, enter campus or buildings, or be employed" prevents daycares from excluding students exhibiting symptoms of contagious diseases or taking common-sense precautions to stop the spread of infectious disease at daycares.

104.    This aspect of the IMFA effectively forces daycares to permit children to attend even when sick with infectious diseases that endanger the health of other children and staff.

105.    By forbidding daycares from excluding sick and contagious children, the IMFA impermissibly infringes on the rights of a private business to operate as it sees fit.

106.    Requiring that daycares permit sick children to attend will cause permanent and irreparable harm to the daycares' ability to operate their businesses, leading to higher expenses, frequent closures, and loss of business resulting from their inability to provide a safe, healthy environment for children.

107.    As applied to daycares, the IMFA's mandate that daycares may not require medical interventions as a condition of attendance is not rationally related to a legitimate state interest.

108.    Accordingly, the IMFA violates Le Soleil's state due process rights.

### THIRD CAUSE OF ACTION
**(On Behalf of Le Soleil Against All Defendants)**
**Fourteenth Amendment - Vagueness**

109.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

110.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution prohibits statutes that are so impermissibly vague that "people of common intelligence must necessarily guess at its meaning." *Sons & Daughters of Idaho, Inc. v. Idaho Lottery Comm'n*, 142 Idaho 659, 662, 132 P.3d 416, 419 (2006).

111.    The IMFA includes terms that are vague, indefinite, arbitrary, and subject to different meanings such that they fail to provide adequate notice of the obligations they create, in violation of the Fourteenth Amendment to the United States Constitution.

112.    In particular, the terms "medical intervention," "medical action," and "alter the health or biological function of a person" are vague and confusing in that they provide no guidance as to what is covered or required under the IMFA.

113.    The IMFA's vague and confusing terms provide wholly insufficient guidelines or standards to determine whether a daycare can take steps to separate or exclude symptomatic children from childcare or require staff or children to take even basic measures to prevent disease.

114.    This vagueness violates the Fourteenth Amendment to the U.S. Constitution because the IMFA fails to put daycares on notice of what conduct exposes them to enforcement actions under the law.

## FOURTH CAUSE OF ACTION
### (On Behalf of Plaintiff Parents Against All Defendants)
### Violation of Due Process Under the Fourteenth Amendment of the U.S. Constitution

115.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

116.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

117.    The United States Supreme Court has firmly upheld the fundamental right of parents, rooted in the Fourteenth Amendment, to make decisions concerning the care, custody, and control of their children.

118.    The primary role of the parents in the upbringing of their children is "established beyond debate as an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972).

119.    One of the "high dut[ies]" of parents is "to recognize symptoms of illness and to seek and follow medical advice." *Parham v. J. R.,* 442 U.S. 584, 602 (1979).

120.    Plaintiff Parents believe that it is their duty to protect their vulnerable young children by ensuring that they are in a childcare environment that takes steps to prevent disease outbreaks, including by requiring certain immunizations to attend and excluding sick children.

121.    The IMFA, as a matter of law, interferes with parents' fundamental rights by prohibiting childcare environments that take these steps to prevent disease outbreaks and to keep children safe and healthy.

122.    The IMFA, by preventing daycares statewide from taking steps to prevent disease outbreaks, interferes with parents' fundamental rights to direct their children's upbringing and education, to protect their children's health, and to answer their high duty to seek and follow

medical advice on their children's behalf.

123.    Applying the IMFA to Plaintiff Parents' choice of daycares around the state does not serve any compelling, significant, legitimate, or even valid interest.

124.    Defendants have alternative, less restrictive means to achieve any legitimate interests rather than forcing Plaintiff Parents to abandon their Fourteenth Amendment rights.

125.    Accordingly, as applied to Plaintiff Parents, the IMFA violates their fundamental rights as parents as guaranteed under the United States Constitution.

126.    Federal law, under 42 U.S.C. § 1983, also provides for a cause of action against the government for these constitutional violations.

**FIFTH CAUSE OF ACTION**
**(On Behalf of Plaintiff Parents Against All Defendants)**
**Violation of Due Process Under the Idaho Constitution**

127.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

128.    Article I, Section 13 of the Idaho Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

129.    The Idaho Supreme Court has firmly upheld the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *See Martin v. Vincent*, 34 Idaho 432, 201 P. 492, 493 (1921) ("The right of a parent to the custody, control, and society of his child is one of the highest known to the law.").

130.    Plaintiff Parents believe that it is their duty to protect their vulnerable young children by ensuring that they are in a childcare environment that takes steps to prevent disease outbreaks, including by requiring certain immunizations to attend and excluding sick children.

131.    The IMFA, as a matter of law, interferes with parents' fundamental rights by

prohibiting childcare environments that take these steps to prevent disease outbreaks and to keep children safe and healthy.

132.    The IMFA, by preventing daycares statewide from taking steps to prevent disease outbreaks, interferes with parents' fundamental rights to direct their children's upbringing and education, to protect their children's health, and to answer their high duty to seek and follow medical advice on their children's behalf.

133.    Applying the IMFA to Plaintiff Parents' choice of daycares around the state does not serve any compelling, significant, legitimate, or even valid interest.

134.    Defendants have alternative, less restrictive means to achieve any legitimate interests rather than forcing Plaintiff Parents to abandon their constitutional rights.

135.    Accordingly, as applied to Plaintiff Parents, the IMFA violates their fundamental rights as parents as guaranteed under the Idaho Constitution.

136.    This Court has supplemental jurisdiction to address this claim.

**SIXTH CAUSE OF ACTION**
**(On Behalf of Plaintiff Parents Against All Defendants)**
**Violation of Idaho Code § 32-1010, *et seq.***

137.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

138.    Idaho has codified the same fundamental rights in the IPRA, Idaho Code § 32-1010, *et seq.*, which provides that the interests and role of parents in the care, custody and control of their children are both implicit in the concept of ordered liberty and deeply rooted in our nation's history and tradition. I.C. § 32-1010(2).

139.    The protections and rights recognized by the IPRA are rooted in the due process of law guaranteed pursuant to section 13, article, I of the Idaho Constitution. I.C. § 32-1010(5).

140.    Idaho law provides that these fundamental rights of parents "include the high duty and right to nurture and direct their children's destiny, upbringing and education." I.C. § 32-1010(3).

141.    The IPRA grants parents who have legal custody of any minor child or children the fundamental right to make decisions concerning their: (1) "care, custody and control," I.C. § 32-1011 (2) "education," I.C. § 32-1012, and (3) "the furnishing of health care service to the minor child," I.C. 32-1015(2).

142.    Under the IRPA, a law may not restrict or interfere with a parent's fundamental and established rights under the act unless the state can demonstrate by clear and convincing evidence that the law is essential to further a compelling government interest, and is the least restrictive means of doing so. I.C. § 32-1013.

143.    Plaintiffs believe that it is their duty to protect their vulnerable young children by ensuring that they are in a childcare environment that takes steps to prevent disease outbreaks, including by requiring certain immunizations to attend and excluding sick children.

144.    The IMFA, as a matter of law, interferes with parents' fundamental rights by prohibiting childcare environments that take these steps to prevent disease outbreaks and to keep children safe and healthy.

145.    The IMFA, by preventing daycares statewide from taking steps to prevent disease outbreaks, interferes with Plaintiff Parents' statutory rights to direct their children's upbringing and education, to protect their children's health, and to answer their high duty to seek and follow medical advice on their children's behalf.

146.    Applying the IMFA to Plaintiff Parents' choice of daycares around the state does not serve any compelling, significant, legitimate, or even valid interest. Defendants have

alternative, less restrictive means to achieve any legitimate interests rather than forcing Plaintiffs to abandon their statutory rights.

147.    Accordingly, the IMFA violates the IPRA, I.C. § 32-1010, *et seq.*, which provides for a cause of action against the government, and this Court has supplemental jurisdiction to address this claim

**SEVENTH CAUSE OF ACTION**
**Expressive Association**
**(All Plaintiffs Against All Defendants)**

148.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

149.    The First Amendment to the United States Constitution protects the right of persons to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

150.    The First Amendment bars the government from compelling persons to expressively associate with others in the process of creating and disseminating speech.

151.    The First Amendment protects Plaintiffs' right to freely associate and to not associate.

152.    Plaintiff Parents desire to send their children to a daycare provider who believes in the importance of public health and vaccination and acts on this belief by requiring age-appropriate vaccinations as a condition of attendance at the daycare and by taking reasonable measures to protect children from infectious disease.

153.    Le Soleil desires to foster an environment that keeps children and staff healthy and safe, and desires to require age-appropriate vaccinations and implement illness policies to achieve its objectives.

154.    Plaintiff Parents and Le Soleil can only achieve their respective desired outcomes if they are permitted by law to associate with one another.

155.    Applying the IMFA to Plaintiffs harms their ability to promote their beliefs and values about public health and vaccinations and interferes with parents' fundamental rights to direct the custody and care of their children.

156.    Applying the IMFA to Le Soleil does not serve any compelling, significant, legitimate, or even valid interest.

157.    Forcing Le Soleil to accept unvaccinated students, in violation of its beliefs about public health and the safe care of children, is not rationally related to any valid interest.

158.    Forcing Plaintiff Parents' minor children to associate with unvaccinated children in their childcare environment does not serve any valid interest in a narrowly tailored way.

159.    Defendants have alternative, less restrictive means to achieve any legitimate interests rather than forcing Plaintiffs to abandon their First and Fourteenth Amendment rights.

160.    As applied to all Plaintiffs, the IMFA violates the First Amendment right to expressive association.

161.    As applied to Plaintiff Parents, the IMFA further violates their rights to expressively associate as a means to exercise their fundamental parental rights guaranteed by Idaho law and the Idaho and United States Constitutions.

**EIGHTH CAUSE OF ACTION**
**Declaratory Judgment on Obligations Pursuant to I.C. § 73-501, *et seq.***

162.    Plaintiffs reallege and incorporate by reference all the prior paragraphs of this Complaint as if set forth in full herein.

163.    This Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, has the authority to declare rights, status, and other legal relations, whether or not further relief is

or could be claimed, with respect to the IMFA.

164.    Plaintiffs' rights, status, or other legal relations are affected by statute, namely the IMFA and IPRA as set forth above.

165.    Plaintiffs request that this Court issue a declaratory judgment that the IMFA violates the First and Fourteenth Amendments of the United States Constitution and Article I, Section 13, of the Idaho Constitution and is therefore unconstitutional, void, and of no effect.

## VI.    ATTORNEYS' FEES

Plaintiffs have been required to retain the services of an attorney to bring this suit and are entitled to an award of reasonable attorneys' fees incurred, pursuant to Idaho Code § 32-1013(5) and any other applicable and/or appropriate provision of federal and state law.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

1.    Declare that the IMFA violates the First and Fourteenth Amendments of the United States Constitution and Article I, Section 13, of the Idaho Constitution and is therefore unconstitutional, void, and of no effect;

2.    Preliminarily and permanently enjoin Defendants and their agents, attorneys, servants, employees, successors in office, and other representatives, from enforcing the IMFA in any manner whatsoever;

3.    Grant Plaintiffs' reasonable attorneys' fees, costs and disbursements; and

4.    Grant any other and further relief that this Court deems just or appropriate.

DATED:    December 11, 2025

/s/ Wendy J. Olson
_____
Wendy J. Olson
E. Anders Pedersen
Audrey G. Scholer
Andrea S. Carone

*Attorneys for Plaintiffs Le Soleil Child Care LLC, Jessica Duvall, Samatha Todd, and Leslie Sedlacek*