Andrea S. Carone, ISB No. 10344
andrea.carone@stoel.com
Wendy J. Olson, ISB No. 7634
wendy.olson@stoel.com
E. Anders Pedersen, ISB No. 11626
anders.pedersen@stoel.com
Audrey G. Scholer, ISB No. 11275
audrey.scholer@stoel.com
STOEL RIVES LLP
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

*Attorneys for Plaintiffs Le Soleil Child Care LLC,*
*Jessica Duvall, Samatha Todd, and Leslie Sedlacek*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LE SOLEIL CHILD CARE LLC, an Idaho limited liability company, JESSICA DUVALL, an individual, LESLIE SEDLACEK, an individual, SAMANTHA TODD, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as the Attorney General for the State of Idaho, JAN BENNETTS, in her official capacity as Prosecuting Attorney for Ada County,<br><br>Defendants. | Case No. 1:25-cv-00695-AKB<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
151353511.1 0099880-01574

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ...................................................................................................... 7

II. FACTUAL BACKGROUND ..................................................................................... 8

    A.    The Idaho Medical Freedom Act ........................................................................ 8

    B.    The Parties ........................................................................................................ 10

        i.    Le Soleil ................................................................................................ 10

        ii.    Leslie Sedlacek ..................................................................................... 11

        iii.    Samantha Todd ..................................................................................... 11

        iv.    Jessie Duvall ......................................................................................... 12

III. ARGUMENT .......................................................................................................... 13

    A.    Plaintiffs Are Likely to Succeed on Their Claims That the IMFA Violates Le Soleil's and the Plaintiff-Parents' Substantive Due Process Rights Under the United States and Idaho Constitutions ............................................... 13

        i.    The IMFA violates Le Soleil's due process rights under the United States and Idaho constitutions because it is arbitrary and has no rational relationship to a legitimate government interest ........................ 14

        ii.    The IMFA violates the Parent Plaintiffs' fundamental interest in the care, custody, and control of their children under the United States and Idaho constitutions and the IPRA .......................................... 16

        iii.    The IMFA cannot withstand strict scrutiny ............................................ 18

        iv.    The IMFA violates the IPRA because it is not essential to further a compelling governmental interest, nor is it the least restrictive means necessary ................................................................................... 19

        v.    The IMFA violates the Plaintiffs' right of expressive association .......... 20

        vi.    The IMFA's prohibitions regarding daycare facilities are unconstitutionally vague and therefore should be enjoined .................... 21

    B.    Absent Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm ...................... 23

    C.    The Balance of Equities and Public Interest Favor an Injunction ....................... 24

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...................................................................................7

*BABE VOTE v. McGrane*,
  173 Idaho 682, 546 P.3d 694 (2024)........................................................................12

*Bell v. Idaho Transp. Dep't*,
  151 Idaho 659, 262 P.3d 1030 (Ct. App. 2011) ........................................................8

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000)..................................14, 15

*Bradbury v. Idaho Jud. Council*,
  136 Idaho 63, 28 P.3d 1006 (2001)...........................................................................8

*City of Chicago v. Morales*,
  527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999)............................................15

*Coffman v. Queen of Valley Med. Ctr.*,
  895 F.3d 717 (9th Cir. 2018) .....................................................................................7

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ...................................................................................7

*Elrod v. Burns*,
  427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).......................................7, 17

*Fellowship of Christian Athletes v. San Jose Sch. Dist.*,
  82 F.4th 664 (9th Cir. 2023) ....................................................................................18

*Fields v. Palmdale Sch. Dist.*,
  427 F.3d 1197 (9th Cir. 2005) ..................................................................................11

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013)..................................................................................18

*Hecox*,
  104 F.4th at 1035-36 ................................................................................................17

*Hecox*, 104 F.4th at 1089 ...........................................................................................18

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ....................................................................................17

# TABLE OF AUTHORITIES
## (Continued)

Page

*Holder v. Humanitarian L. Project,*
  561 U.S. 1, 20, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010) ........................................16

*Idaho v. Coeur d'Alene Tribe,*
  49 F. Supp. 3d 751 (D. Idaho 2014) ..........................................................................7

*Lorillard Tobacco Co. v. Reilly,*
  533 U.S. 525, 121 S. Ct. 2404, 150 L. Ed. 2d 532 (2001) ........................................12

*Mahmoud v. Taylor,*
  606 U.S. ___, 145 S. Ct. 2332, 222 L. Ed. 2d 695 (2025) ........................................12

*Martin v. Vincent,*
  34 Idaho 432, 201 P. 492 (1921)................................................................................10

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) .................................................................................7, 17

*Meyer v. Nebraska,*
  262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923)..................................................11

*Mullins v. Oregon,*
  57 F.3d 789 (9th Cir. 1995) ........................................................................................8

*Nken v. Holder,*
  556 U.S. 418, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)........................................18

*Papachristou v. City of Jacksonville,*
  405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972)..............................................16

*Parents for Priv. v. Barr,*
  949 F.3d 1210 (9th Cir. 2020) ...................................................................................11

*Parham v. J.R.,*
  442 U.S. 584, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979)............................................12

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary,*
  268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925)............................................10, 11

*Poe by & through Poe v. Labrador,*
  709 F. Supp. 3d 1169 (D. Idaho 2023) ................................................................17, 18

*Recycle for Change v. City of Oakland,*
  856 F.3d 666 (9th Cir. 2017) ......................................................................................7

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Reno v. Flores*,
  507 U.S. 292, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993)..........................................................10

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984)..................................................................................................14, 15

*Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*,
  4 F.4th 747 (9th Cir. 2021) ...........................................................................................8

*Smith v. Idaho Dep't of Corr.*,
  128 Idaho 768, 918 P.2d 1213 (1996).................................................................................8

*Sylvia Landfield Tr. v. City of Los Angeles*,
  729 F.3d 1189 (9th Cir. 2013) .......................................................................................8

*Troxel v. Granville*,
  530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)..........................................4, 10, 11, 12

*United States v. Wunsch*,
  84 F.3d 1110 (9th Cir. 1996) ........................................................................................16

*Wallis v. Spencer*,
  202 F.3d 1126 (9th Cir. 2000) ......................................................................................12

*Washington v. Glucksberg*,
  521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).........................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)........................................................................................................7

**Statutes**

I.C. § 32-1010(2)..........................................................................................................13

I.C. § 32-1010(3)..........................................................................................................13

I.C. § 32-1010, *et seq.*....................................................................................................4, 13

I.C. § 32-1011 ..............................................................................................................13

I.C. § 32-1012 ..............................................................................................................13

I.C. § 32-1013 ..............................................................................................................13

I.C. § 32-1013(1)...........................................................................................................14

## TABLE OF AUTHORITIES
### (Continued)

**Page**

I.C. § 32-1015(2)....................................................................................................................13

I.C. § 33-512(7).....................................................................................................................3, 9

I.C. § 39-1101 ...........................................................................................................................10

I.C. § 39-1118 (1990-2025) ...................................................................................................9, 18

I.C. § 39-1118(1)(b)...................................................................................................................3

I.C. § 39-4801 ........................................................................................................................3, 9

I.C. § 73-501, *et. seq.* .................................................................................................................1

I.C. § 73-502(3)..................................................................................................................1, 2, 16

I.C. § 73-503(4)................................................................................................................. passim

I.C. § 73-503(10)........................................................................................................................4

I.C. § 73-503(12)........................................................................................................................2

**Constitutional Provisions**

Idaho Const. art. I, § 13..............................................................................................................8

U.S. Const. amend. I ........................................................................................................14, 17, 18

U.S. Const. amend. XIV, § 1 ......................................................................................................8

**Other Authorities**

AAP, Vaccination Recommendations by the AAP (July 29, 2025) ...............................................9

AMA, Why vaccines matter to your health (last visited Oct. 24, 2025).........................................9

CDC, Vaccines & Immunization, Child and Adolescent Immunization Schedule
    by Age (updated Aug. 7, 2025)..........................................................................................9

Senate Bill 1023 ........................................................................................................................3

Senate Bill 1210 .........................................................................................................................1

Talbird S.E., Carrico J., La E.M., et al., *Impact of Routine Childhood
    Immunization in Reducing Vaccine-Preventable Diseases in the United States*
    (2022), https://pubmed.ncbi.nlm.nih.gov/35821599/ .........................................................9

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

WHO, Fact sheets, Immunization coverage (July 15, 2025) ........................................................9

Plaintiffs Le Soleil Child Care LLC ("Le Soleil") and Jessie Duvall, Leslie Sedlacek, and Samantha Todd (the "Plaintiff-Parents" and collectively with Le Soleil the "Plaintiffs") seek to preliminarily enjoin Defendants Raúl Labrador and Jan Bennetts (the "Defendants" or "State") from enforcing Idaho Code § 73-503(4) against private daycares, including Le Soleil.

Idaho Code § 73-503(4) is unconstitutional. It violates Le Soleil's and Plaintiff-Parents' substantive due process rights, infringes on Plaintiffs' right of expressive association, and is unconstitutionally vague. In addition to violating Plaintiffs' constitutional rights, Idaho Code § 73-503(4) infringes on Plaintiff-Parents' rights under the Idaho Parental Rights Act (the "IPRA").

## I. INTRODUCTION

On May 4, 2025, the Idaho Legislature passed Senate Bill 1210, the Idaho Medical Freedom Act ("IMFA"), which took effect on July 1, 2025. The IMFA drastically limits private businesses' rights to implement public health measures taken for the safety of patrons and employees. *See* I.C. § 73-501, *et. seq.* Chief among these limitations is the revocation of private daycares' right to require any type of "medical procedure, treatment, device, drug, injection, medication, or medical action taken to diagnose, prevent, or cure a disease or alter the health or biological function of a person" to attend, enter, or be employed by that daycare. I.C. § 73-502(3).

The IMFA appears to all but eliminate private daycares' rights to impose *any* health-related policies for its staff and students. The IMFA is so far reaching that it not only forbids vaccination requirements, but also seemingly forbids even anodyne health-related policies like handwashing and sending home children when they are sick. This is so despite the fact that due to their age alone, children who attend daycare make up some of the most medically vulnerable populations. This sweeping legislation has left Plaintiff-Parents, and parents like them, few options: either forgo daycare, or send their children to a daycare without medical policies to protect their child from disease, in direct conflict with their beliefs of how best to raise and care for their children.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 7

The IMFA is unconstitutional and violates Idaho state law. It directly infringes on Plaintiff-Parents' fundamental liberty interest to direct the care, custody, and control of their children, as well as their right to associate with like-minded families and childcare providers. In addition to violating Plaintiff-Parents' rights, the IMFA violates Plaintiff Le Soleil's due process rights as it relates to its legitimate business interest. Accordingly, this Court should enjoin the statute's enforcement and end the IMFA's unlawful infringement on Plaintiffs' rights.

## II.  FACTUAL BACKGROUND

### A.    The Idaho Medical Freedom Act

The IMFA was signed into law on May 4, 2025. The IMFA provides in relevant part that "[a] school operating in the state or a business subject to chapter 11, title 39, Idaho Code, operating in the state [i.e., a daycare]  shall not mandate a medical intervention for any person to attend, enter campus or buildings, or be employed…." I.C. § 73-503(4). "Medical intervention" is defined broadly to mean "a medical procedure, treatment, device, drug, injection, medication, or medical action taken to diagnose, prevent, or cure a disease or alter the health or biological function of a person." I.C. § 73-502(3). It is unclear what, if any, health-related action could fall outside the scope of this very broad definition. In particular, any "medical action taken" to "prevent[] or cure a disease or alter the health or biological function of a person" by its terms sweeps up even the most commonplace medical actions, like excluding a sick person until no longer contagious or requiring basic standards of hygiene like employee handwashing. The IMFA further states that, "[n]otwithstanding any other provision of law to the contrary, under no circumstance may a healthy person be excluded in a disease outbreak due to such person's vaccination status." I.C. § 73-503(12).

Notably, the IMFA provides certain statutory exemptions for both private and public schools, including Idaho Code § 39-4801 and Idaho Code § 33-512(7).[1] *See* I.C. § 73-503(4). This distinction is perhaps only explained as the result of concern voiced by Governor Brad Little prior to the law's passage. On March 29, 2025, Governor Little expressed concern that the law "remove[d] parents' freedom to ensure their children stay healthy at school" and are protected from "highly contagious conditions including measles, lice, ringworm, pink eye, strep throat, stomach viruses, the flu, and other illnesses that disrupt families' lives." March 29, 2025 Transmittal Letter at 1, veto_s-1023aaaa_2025.pdf ("Transmittal Letter"). In response, the legislature provided certain exemptions that limit the IMFA's applicability to both public and private schools. I.C. § 73-503(4). But the legislature did not provide these same exemptions for daycare facilities where parents are similarly concerned about their constitutional right to ensure their children stay healthy from highly contagious conditions—a right that Plaintiff-Parents used to possess.

Under the IMFA, private daycares can no longer require any child to receive age-appropriate immunizations that conform "to recognized standard medical practices in" Idaho and cannot enact even the most basic of sick policies. *See* I.C. § 39-1118(1)(b). As a result, the IMFA has left Plaintiff-Parents, and parents like them, few options: either forgo childcare in a daycare setting or send their children to a daycare without medical policies to protect their family from disease. These options are in direct conflict with Plaintiff-Parents' beliefs of how to best raise and

---

[1] The initial version of the IMFA, Senate Bill 1023, was vetoed by Governor Little. *See* SB 1023, 68th Legislature (2025); *see also* Transmittal Letter (vetoing SB 1023 because "[p]arents already have enough to worry about while raising their children. They do not need government imposing more limitations on keeping children safe and healthy from contagious illnesses at school"). The limitations added to the IMFA were presumably in response to Governor Little's concerns, but entirely fail to account for daycares. *Compare* SB 1023 *with* I.C. § 73-503(4).

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 9

151353511.1 0099880-01574

care for their children. By eliminating Plaintiff-Parents' ability to turn to the private marketplace to find childcare that meets their needs and standards, the IMFA is active government interference with "perhaps the oldest of the fundamental liberty interest(s)," a parent's right to direct the "care, custody and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). This interest is so fundamental and of such importance to the citizens of Idaho that it is also protected by the laws of this State. *See* I.C. § 32-1010, *et seq*.

The IMFA expressly grants enforcement authority to "either the attorney general or the prosecuting attorney for the county where a violation occurs." I.C. § 73-503(10). In addition to providing for injunctive relief, the IMFA requires any violating entity to pay the State for any attorneys' fees and costs incurred in the prosecution of the entity. *Id.*

**B.     The Parties**

i.     <u>Le Soleil</u>

Le Soleil is a Boise daycare that provides full-time childcare for children between ages six weeks and approximately three years. Declaration of Justin Snyder in Support of Plaintiffs' Motion for Preliminary Injunction ("Snyder Decl."), ¶ 2. From its inception, Le Soleil has implemented rigorous health protocols, including a universal requirement that all enrolled children receive age-appropriate vaccinations in accordance with Idaho's immunization schedule without exception. *Id.* at ¶¶ 7-8, 10; *see also id.*, Ex. A (family manual). Prior to the enactment of the IMFA, Le Soleil maintained additional health and safety related policies including daily sanitization, mandatory handwashing, and daily health screenings during high levels of community infection rates. Snyder Decl., ¶ 11.

These were enacted not only to ensure the health and safety of Le Soleil's students and staff, but also to ensure Le Soleil's continued sustainability. *Id.* at ¶¶ 21-28. Due to the IMFA, Le Soleil has been forced to suspend its desired health-related policies. *Id.* at ¶ 19.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 10

ii.    Leslie Sedlacek

Leslie Sedlack is a registered nurse who has two children, ages four and two. Declaration of Leslie Sedlacek in Support of Plaintiffs' Motion for Preliminary Injunction ("Sedlacek Decl."), ¶ 2. Both of Ms. Sedlacek's children have attended daycare at Le Soleil since they were 10 weeks old. *Id.* Ms. Sedlacek believes it is in the best interest of her children to attend a daycare that requires vaccinations, as doing so minimizes the risk that her children might come into contact with an older, unvaccinated child or caregiver and be exposed to certain vaccine-preventable diseases. *Id.* at ¶¶ 4-8. Ms. Sedlacek also believes that sending her children to daycare provides them with socialization benefits that they would not obtain elsewhere. *Id.* at ¶ 11. Ms. Sedlacek believes that her family has an obligation to protect her community against communicable diseases in part by receiving all recommended vaccinations and making decisions with the community's health in mind, and she wishes to associate with like-minded families when selecting a private childcare provider. *Id.* at ¶ 13. The IMFA unconstitutionally revokes her right to direct the socialization and education of her children by choosing a private daycare where her children will be safe.

iii.    Samantha Todd

Samantha Todd, a physical therapist, is a mother of two. Declaration of Samantha Todd in Support of Plaintiffs' Motion for Preliminary Injunction ("Todd Decl."), ¶ 2. Her first child attended Le Soleil until she moved up to preschool, and her second child is currently enrolled. *Id.* at ¶ 3. When Ms. Todd sent her children to Le Soleil, she intentionally relied on herd immunity to protect her children from contagious illnesses during their infancy when they were unable to be vaccinated. *Id.* at ¶ 4 . It is of the utmost importance to Ms. Todd that all parents and staff in her children's daycare community feel a mutual responsibility to help ensure the health and safety of others through the use of vaccines. *Id.* at ¶¶ 5-7. Ms. Todd believes in her right to direct the care,

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 11

custody, and upbringing of children, which includes protecting them from avoidable health risks by sending them to a private daycare that requires vaccinations and takes common-sense precautions to prevent the spread of illness. *Id.* at ¶¶ 10-11. The IMFA infringes Ms. Todd's freedom as a parent to make these choices about her children's upbringing and safety and the environment in which they spend their time.

iv.    Jessie Duvall

Jessie Duvall is a mother and pediatrician. She also serves as a faculty member at Full Circle Health's pediatrics residency. Declaration of Jessie Duvall in Support of Plaintiffs' Motion for Preliminary Injunction ("Duvall Decl."), ¶ 2. Dr. Duvall has two young children, ages three and four months. *Id.* at ¶ 4. Dr. Duvall chose to enroll her first child at Le Soleil because of her belief that it provided the best forum for socializing and educating her young child, and because it aligned with Dr. Duvall's core belief that the best way to promote and protect the health of children is to require all age-appropriate vaccinations and to maintain a robust health policy to combat the spread and risks of infectious diseases. *Id.* at ¶ 6. Because of Le Soleil's previous health policies, Dr. Duvall was able to send her first child to a daycare that was patronized only by other families that shared the same commitment to promoting the health and safety of Le Soleil's staff and the children in their care. *Id.* at ¶ 8. Dr. Duvall recently had her second child. *Id.* at ¶ 10. Dr. Duvall believes that Le Soleil's curriculum, provided in an environment with all available precautions to limit exposure to vaccine-preventable diseases in place, is the best forum for her second child's socialization and educational development. *Id.* at ¶¶ 7-8. However, because of the IMFA, Dr. Duvall can no longer send her second child to any daycare, including Le Soleil, that conforms with her core beliefs regarding the care, custody, and control of her children. *Id.* at ¶¶ 11-18.

### III.  ARGUMENT

To obtain a preliminary injunction, Plaintiffs must show "(1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest." *Idaho v. Coeur d'Alene Tribe*, 49 F. Supp. 3d 751, 762 (D. Idaho 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018)). The court may apply a sliding scale test, balancing the elements of the preliminary injunction standard "such that a stronger showing of one element may offset a weaker showing of another." *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Further, where, as here, "the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Plaintiffs have raised causes of action under the United States and Idaho constitutions and under Idaho state law. *See generally* Complaint. While showing a likelihood of success on just one of their claims is enough to justify an injunction, Plaintiffs are likely to succeed on the merits of all their claims.

A.    **Plaintiffs Are Likely to Succeed on Their Claims That the IMFA Violates Le Soleil's and Plaintiff-Parents' Substantive Due Process Rights Under the United States and Idaho Constitutions**

Le Soleil and Plaintiff-Parents raise as-applied substantive due process claims under the United States and Idaho constitutions. Both are likely to succeed on the merits.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 13

i.    The IMFA violates Le Soleil's due process rights under the United States and Idaho constitutions because it is arbitrary and has no rational relationship to a legitimate government interest

The due process clauses of both the Idaho and United States constitutions include "a substantive component that protects certain individual liberties from state interference." *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995); U.S. Const. amend. XIV, § 1; Idaho Const. art. I, § 13.[2] Where a statute is challenged on the basis that it unconstitutionally infringes on a social or economic interest, such as a business interest, courts apply the rational basis test, requiring the statute to bear a rational relationship to a legitimate state interest. *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021); *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 69, 28 P.3d 1006, 1012 (2001); *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). While rational basis is generally a low bar for the government to meet, a law will not survive if it is arbitrary, is unreasonable, or has "no substantial relationship to the public health, safety, morals, or general welfare." *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1193 (9th Cir. 2013) (quotation modified). The IMFA infringes on Le Soleil's business interest, that is, its ability to set its own health and safety standards for its business, ensuring that Le Soleil can conduct its business in a safe, consistent, and profitable manner. Snyder Decl., ¶¶ 22-28. Accordingly, the IMFA's infringement on Le Soleil's business interest must survive rational basis review. It does not.

The State does not have a legitimate government interest in preventing Le Soleil from implementing policies that help protect its staff and students from disease. Rigorous scientific

---

[2] The "due process guarantees derived from" the United States and Idaho constitutions "are substantially the same." *Bell v. Idaho Transp. Dep't*, 151 Idaho 659, 664 n.1, 262 P.3d 1030, 1035 n.1 (Ct. App. 2011); *see also Smith v. Idaho Dep't of Corr.*, 128 Idaho 768, 771, 918 P.2d 1213, 1216 (1996). Thus, Plaintiffs' discussion applies equally to their claims under either constitution.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 14
151353511.1 0099880-01574

research and decades of real-world data establish that childhood vaccines are among the safest and most effective tools to protect children from contagious disease. Declaration of Jessica Maddox in Support of Plaintiffs' Motion for Preliminary Injunction ("Maddox Decl."), ¶¶ 11-15.[3] Indeed, for more than three decades, Idaho required that daycares confirm that a child has received their vaccines before being admitted. *See* I.C. § 39-1118 (1990-2025). This sudden about-face in the IMFA, which also forbids Le Soleil and other private daycares from sending home a child with actively contagious pink eye, head lice, or hand, food, and mouth disease, does not bear a reasonable relationship to a legitimate state interest.

Further, the IMFA's disparate treatment of daycares in comparison to schools further demonstrates that the law does not bear a rational relationship to a legitimate state interest. Both private and public schools are expressly exempted from the portions of the IMFA that prohibit daycare facilities from implementing and enforcing safety and health measures. *See* I.C. § 73-503(4) (the IMFA grants the same authority to "private and parochial schools" as it does to school districts). Under these exemptions, private and public schools can continue to require all school-age children provide an immunization record to school authorities in order to attend, as provided in I.C. § 39-4801, and school districts are free "[t]o exclude from school pupils with contagious or infectious diseases who are diagnosed or suspected as having a contagious or infectious disease or those who are not immune and have been exposed to a contagious or infectious disease[.]" I.C. § 33-512(7).

---

[3] *See also* Sandra E. Talbird, Justin Carrico, Elizabeth M. La, et al., *Impact of Routine Childhood Immunization in Reducing Vaccine-Preventable Diseases in the United States* (Sept. 1, 2022), https://pubmed.ncbi.nlm.nih.gov/35821599/; CDC, Vaccines & Immunizations, *Child and Adolescent Immunization Schedule by Age* (updated Aug. 7, 2025); AAP, *Vaccination Recommendations by the AAP* (July 29, 2025); AMA, *Why vaccines matter to your health* (last visited Dec. 3, 2025); WHO, Fact sheets, *Immunization coverage* (July 15, 2025).

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 15

Because the IMFA infringes on Le Soleil's business interest and is not rationally related to a legitimate government interest, Le Soleil is likely to succeed on its substantive due process claim.

ii.    The IMFA violates the Plaintiff-Parents' fundamental interest in the care, custody, and control of their children under the United States and Idaho constitutions and the IPRA

Substantive due process forbids the government from infringing on "'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citations omitted). "[P]erhaps the oldest of the fundamental liberty interests" is "the interest of parents in the care, custody, and control of their children[.]" *Troxel*, 530 U.S. at 65; *see also Martin v. Vincent*, 34 Idaho 432, 201 P. 492, 493 (1921) ("The right of a parent to the custody, control, and society of his child is one of the highest known to the law."). This fundamental liberty interest reflects the well-founded understanding that a "child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925). Included in a parent's right to direct the care, custody, and upbringing of their children is a parent's right to educate their children in a school of their choosing, and to make decisions to protect the health and safety of their children. The IMFA directly infringes on these rights.

The IMFA directly infringes on Plaintiff-Parents' fundamental right to direct the care, custody, and upbringing of their children. Selecting childcare that meets a parent's standards is inherently intertwined with a parent's right to direct the care and upbringing of their children. Indeed, even the Idaho Legislature has recognized that the "primary responsibility for evaluation and selection of daycare services [rests] with parents." I.C. § 39-1101. The IMFA has eliminated Plaintiff-Parents' ability to go to the private marketplace to select a daycare that has implemented

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 16

health and safety protocols that conform to the parents' choices and values. This directly infringes on Plaintiff-Parents' right to direct the care and upbringing of their children.

The IMFA also infringes on Plaintiff-Parents' right to educate and socialize their children in a private daycare of their choosing, which infringes a parent's long-recognized right to educate their children in a private school of their choosing. In *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923), the Supreme Court ruled that a state law that prohibited private schools from teaching children any subject in any modern language impermissibly "attempted materially to interfere . . . with the power of parents to control the education of their own" by being able to select a private school that conformed to a parent's wishes. *Id.* at 401. Since *Meyer*, the Supreme Court and the Ninth Circuit have consistently held that laws requiring specific educational programs, or depriving parents of their right to choose private education, unconstitutionally interfere with parents' fundamental right to direct the upbringing, education, and socialization of their children. *See, e.g.*, *Pierce*, 268 U.S. at 534-35; *Troxel*, 530 U.S. at 80 (Thomas, J., concurring in judgment); *Parents for Priv. v. Barr*, 949 F.3d 1210, 1229 (9th Cir. 2020); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005).

Just as in *Meyer*, where the law materially interfered with the rights of parents to direct the education of their children by prohibiting schools from providing education in accordance with the parents' wishes, here, the IMFA interferes with Plaintiff-Parents' ability to direct the upbringing and education of their children by prohibiting private daycares from providing care and education that aligns with Plaintiff-Parents' desires. The IMFA removes Plaintiff-Parents' freedom to select a daycare that meets their standards for health and safety that they believe are necessary to best educate and socialize their young children.

The IMFA also directly affects Plaintiff-Parents' right to make decisions in furtherance of the health and safety of their children. *See Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) ("The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state.") (citing *Parham v. J.R.,* 442 U.S. 584, 602 (1979)); *see also Troxel,* 530 U.S. at 68-69. Indeed, one of the "high dut[ies]" of parents is "to recognize symptoms of illness and to seek and follow medical advice." *Parham,* 442 U.S. at 602. Under the IMFA, Plaintiff-Parents can no longer send their child to a private daycare that keeps them safe and healthy by implementing policies that prevent disease outbreaks. The IMFA prohibits daycares from using such tools, thereby "remov[ing] parents' freedom to ensure their children stay healthy at [daycare]." Transmittal Letter at 1.

### iii. The IMFA cannot withstand strict scrutiny

Because the IMFA's restrictions on private daycares infringe on Plaintiff-Parents' fundamental rights to the care, custody, control, and education of their children, strict scrutiny applies. To survive strict scrutiny, a government must demonstrate that its policy "advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Mahmoud v. Taylor*, 606 U.S. ___, 145 S. Ct. 2332, 2361 (2025). The IMFA does not meet this standard.

To demonstrate that an articulated interest is a "substantial government interest," the burden is on the governmental entity to show that these interests are based on a problem that actually exists. *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561 (2001) ("Our review of the record reveals that the Attorney General has provided *ample documentation* of the problem with underage use of smokeless tobacco and cigars." (emphasis added)); *BABE VOTE v. McGrane*, 173 Idaho 682, 696, 546 P.3d 694, 708 (2024) ("Strict scrutiny presumes legislation is

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 18

unconstitutional unless the government can prove otherwise by establishing it is necessary to further a compelling interest." (citation omitted)).

The State does not have a valid interest, much less a compelling interest, in violating Plaintiff-Parents' right to choose a daycare provider that best serves the care, custody and control of their children. Nor is the IMFA narrowly tailored. The Court need not look any further than to the IMFA's disparate treatment of schools and daycares to find that the State cannot show that the IMFA is narrowly tailored. Thus, Plaintiff-Parents are likely to succeed on the merits of their state and federal constitutional claims, and this Court should grant Plaintiffs' requested injunctive relief.

    iv.    <u>The IMFA violates the IPRA because it is not essential to further a compelling governmental interest, nor is it the least restrictive means necessary</u>

The IPRA, I.C. § 32-1010(2), *et seq.*, provides that "[t]he interests and role of parents in the care, custody and control of their children are both implicit in the concept of ordered liberty and deeply rooted in our nation's history and tradition." The IPRA expressly states that "the interests of the parents include the high duty and right to nurture and direct their children's destiny, including their upbringing and education." I.C. § 32-1010(3). The IPRA grants "[p]arents who have legal custody of any minor child or children the fundamental right to make decisions concerning [1] their care, custody and control" (I.C. § 32-1011), [2] their "education" (I.C. § 32-1012), and [3] "the furnishing of health care services to the[m]" (I.C. § 32-1015(2)). Under the IPRA, a law may not restrict or interfere with a parent's fundamental and established rights unless the State can demonstrate by clear and convincing evidence that the law is essential to further a compelling government interest and is the least restrictive means of doing so. I.C. § 32-1013.

For the same reasons that the IMFA violates Plaintiff-Parents' substantive due process rights, the IMFA violates Plaintiff-Parents' rights under the IPRA. Indeed, the Idaho Legislature recognized that the IMFA's restrictions on daycares implicate the rights created by the IPRA. I.C.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 19

§ 73-503(4) (stating that prohibitions on schools and daycare facilities are "subject to the requirements of the IPRA, sections 32-1010 through 32-1015"). As the IMFA restricts and interferes with Plaintiff-Parents' right to direct the care, custody, and control of their children, the State must be able to prove by clear and convincing evidence that the IMFA is (1) "essential to further a compelling governmental interest"; and is (2) "[t]he least restrictive means available for the furthering of that compelling government interest." I.C. § 32-1013(1). This test closely mirrors the strict scrutiny standard applied in substantive due process claims. Thus, for the same reasons the IMFA violates Plaintiff-Parents' substantive due process rights, the IMFA violates Plaintiff-Parents' rights under the IPRA.

     v.     The IMFA violates Plaintiffs' right of expressive association

The First Amendment guarantees individuals the right to free association, which protects the right of persons "to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000) (citation omitted) (recognizing that the First Amendment protects a right to associate with others in pursuit of commonly held ends). Freedom to associate "plainly presupposes a freedom not to associate." *Id.* at 648 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)). Infringements on the right to associate for expressive purposes may only be justified if the law was "adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S.at 623.

Here, the IMFA impermissibly interferes with Plaintiffs' right of expressive association by compelling Plaintiffs to associate with individuals whose practices directly contradict their beliefs. Plaintiff-Parents elected to send their children to Le Soleil because it shares and actively promotes their deeply held belief in the importance of public health—specifically by requiring age-

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 20
151353511.1 0099880-01574

appropriate vaccinations and implementing reasonable illness prevention policies. *See* Duvall Decl., ¶ 19; Sedlacek Decl., ¶¶ 12, 14-15; Todd Decl., ¶¶ 6, 8-11. Le Soleil similarly aims to cultivate a safe and healthy environment for children and staff and has historically done so by enforcing mandatory vaccination and health protocols aligned with these values, even when those practices come at a business expense. Snyder Decl., ¶¶ 7-8, 10-12, 16-18.

Because Le Soleil must suspend its health and safety related policies and admit unvaccinated children under the IMFA, Plaintiff-Parents who enrolled their children at Le Soleil are required to associate with families who do not share their values and beliefs regarding the importance of vaccines to the health, safety, and education of their children. This form of compelled inclusion undermines the very principles that the right to free association is designed to protect by intruding upon the ability of the association of families at Le Soleil to uphold their core values and standards. *Roberts*, 468 U.S. at 623 ("There can be no clearer example of an intrusion into the internal structure or affairs of an association than a regulation that forces the group to accept members it does not desire. Such a regulation may impair the ability of the original members to express only those views that brought them together."); *see also Dale*, 530 U.S. at 648.

Because the IMFA infringes on Plaintiffs' freedom of association, the IMFA once again is subject to strict scrutiny, which, for the reasons set forth above, it cannot survive.

    vi.    <u>The IMFA's prohibitions regarding daycare facilities are unconstitutionally vague and therefore should be enjoined</u>

To the extent the Court finds that the IMFA lacks clarity, preventing a determination of what conduct Plaintiff Le Soleil is prohibited from engaging in or when prosecution may occur, Plaintiff Le Soleil is still likely to prevail because the IMFA is unconstitutionally vague as applied to daycare facilities. The void-for-vagueness doctrine is an aspect of due process that prohibits statutes that are so vague they invite arbitrary and discriminatory enforcement, *City of Chicago v.*

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 21

*Morales*, 527 U.S. 41, 64 (1999), or compel people of ordinary intelligence to "guess at its meaning and differ as to its application," *United States v. Wunsch,* 84 F.3d 1110, 1119 (9th Cir. 1996) (quotation modified). Here, the IMFA as applied to Le Soleil violates both aspects of this doctrine by failing to inform daycares or those who must enforce the IMFA what conduct is prohibited.

The IMFA's restrictions on daycares are so vague, indefinite, arbitrary, and subject to differing interpretations that they fail to provide adequate notice of what the law commands or forbids. The IMFA prohibits a daycare from requiring a "medical intervention for any person to attend, enter campus or buildings, or be employed." I.C. § 73-503(4). "Medical intervention" is broadly defined as "a medical procedure, treatment, device, drug, injection, medication, or medical action taken to diagnose, prevent, or cure a disease or alter the health or biological function of a person." I.C. § 73-502(3). This definition, along with its terms, is so vague, confusing, and potentially all-encompassing that it provides no guidance as to what conduct the IMFA actually prohibits a daycare from doing. *See, e.g., Papachristou v. City of Jacksonville*, 405 U.S. 156, 166 (1972) (finding an ordinance unconstitutionally vague where the definition was "so all-inclusive and generalized" as to include almost any conduct within the scope of the prohibited conduct).

Furthermore, the IMFA necessarily invites arbitrary and subjective enforcement of the statute. As explained in *Holder v. Humanitarian L. Project,* the terms of a law cannot require "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." 561 U.S. 1, 20 (2010) (citation omitted). The language of the IMFA is unconstitutionally vague because those entrusted to enforce the statute, either the Attorney General or the county prosecutor, are left to rely on their own subjective interpretations of "medical intervention" and "medical action" and enforce the statute based on conduct or policies they

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 22

personally feel should be prohibited. The IMFA fails to provide fair notice of the conduct it prohibits and invites arbitrary enforcement.

**B.      Absent Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm**

The deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Melendres*, 695 F.3d at 1002 (quoting *Elrod*, 427 U.S. at 373); *see also Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2023); *see also Elrod*, 427 U.S. at 373 ("Indeed, the Supreme Court has stated that [t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). As discussed above, the IMFA is unconstitutionally infringing on Plaintiffs' substantive due process rights and the right to associate. Because the IMFA deprives Plaintiffs of their constitutional rights, "it follows inexorably" that Plaintiffs have demonstrated irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Poe by & through Poe v. Labrador*, 709 F. Supp. 3d 1169, 1198 (D. Idaho 2023) ("[B]ecause HB 71 is likely unconstitutional, 'it follows inexorably' that plaintiffs have demonstrated irreparable harm.").

Moreover, the IMFA's mandate that Le Soleil permit sick children to attend daycare will cause permanent and irreparable harm to Le Soleil's ability to operate its businesses, leading to higher expenses, frequent closures, and loss of business resulting from its inability to provide a safe, healthy environment for children. Snyder Decl., ¶¶ 19-28. This inability to provide a safe and healthy environment will also force Plaintiff-Parents to increase the risk that their children will become infected with severe illnesses that could result in hospitalization, permanent complications, or even death, and incur additional burdens they otherwise would not have. *See* Maddox Decl., ¶¶ 19-26; Duvall Decl., ¶¶ 11-20; Sedlacek Decl., ¶¶ 9-11; Todd Decl., ¶ 5. These irreparable harms also justify injunctive relief.

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 23

151353511.1 0099880-01574

## C.      The Balance of Equities and Public Interest Favor an Injunction

Where the government opposes the issuance of a preliminary injunction, the final two preliminary injunction factors—the balance of equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors weigh heavily in Plaintiffs' favor.

Both factors favor "prevent[ing] the violation of a party's constitutional rights." *Hecox*, 104 F.4th at 1089 (citations omitted). Indeed, when a plaintiff "raise[s] serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in [their] favor," *Fellowship of Christian Athletes v. San Jose Sch. Dist.*, 82 F.4th 664, 695 (9th Cir. 2023) (citation omitted), and the "enforcement of an unconstitutional law is always contrary to the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).

As with the irreparable harm factor, Plaintiffs' showing that the IMFA is likely unconstitutional also demonstrates that the final two factors strongly support the issuance of a preliminary injunction. *See Poe*, 709 F. Supp. 3d at 1199. Moreover, injunctive relief will not cause any comparable harm to the State. For decades, Idaho daycares have complied with Idaho's statutory standards governing such aspects of vaccination notices and exemptions. *See* I.C. § 39-1118. These statutes, which were just recently amended, will remain in effect and injunctive relief will simply mandate the pre-IMFA status quo. Thus, the Court should find that these factors weigh in favor of granting Plaintiffs' Motion. *See Hecox*, 104 F.4th at 1089.

### CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion and enter an Order preliminarily enjoining Defendants from enforcing the Idaho Medical Freedom Act's restrictions on daycares.

DATED:    December 11, 2025

/s/ Wendy J. Olson
Wendy J. Olson
E. Anders Pedersen
Audrey Scholer
Andrea S. Carone

*Attorneys for Plaintiffs Le Soleil Child Care LLC,*
*Jessica Duvall, Samatha Todd, and Leslie Sedlacek*

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 25
151353511.1 0099880-01574