Andrea S. Carone, ISB No. 10344
andrea.carone@stoel.com
Wendy J. Olson, ISB No. 7634
wendy.olson@stoel.com
E. Anders Pedersen, ISB No. 11626
anders.pedersen@stoel.com
Audrey G. Scholer, ISB No. 11275
audrey.scholer@stoel.com
STOEL RIVES LLP
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

*Attorneys for Plaintiffs Le Soleil Child Care LLC,
Jessica Duvall, Samatha Todd, and Leslie Sedlacek*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LE SOLEIL CHILD CARE LLC, an Idaho limited liability company, JESSICA DUVALL, an individual, LESLIE SEDLACEK, an individual, SAMANTHA TODD, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as the Attorney General for the State of Idaho, JAN BENNETTS, in her official capacity as Prosecuting Attorney for Ada County,<br><br>Defendants. | Case No. 1:25-cv-00695-AKB<br><br>**DECLARATION OF JESSICA DUVALL** |

I, Jessica Duvall, declare as follows:

1.    I am one of the plaintiffs in the above-captioned matter. I am over the age of eighteen, have personal knowledge of the facts and statements contained in this declaration, and could and would competently testify to these facts if called upon to do so. I submit this declaration

DECLARATION OF JESSICA DUVALL - 1

in support of Plaintiffs' Motion for Preliminary Injunction.

2.      I am a pediatrician who is currently a practicing physician and serves as a faculty member at Full Circle Health's pediatrics residency in Boise, Idaho.

3.      I have spent roughly the last two decades dedicating my personal and professional life to the medical, environmental, and social care of young people of all ages, from newborn to young adults. Promoting the health and welfare of young people (including my own children) is amongst my most fundamental beliefs.

4.      My husband, Jeff, and I have two young children. Our oldest, A.B., recently turned three, and our youngest, R.B., was born this summer.

5.      With our first child, we spent a significant amount of time researching how and where to find childcare. When he was around one, we were able to enroll him at Le Soleil, which had always been our first choice for long-term childcare. He remained at Le Soleil until he recently aged out and began attending Sun Tree, an affiliated preschool.

6.      We chose Le Soleil because of our belief that it provided the best forum for socializing and educating our young child, and in large part, due to its strong commitment to protecting the health and safety of the children in its care.

7.      We firmly believe that the best way to promote and protect the health of our children, and the children whom they attended daycare with, is to require all children to receive age-appropriate vaccinations and to maintain a robust health and sickness policy to combat the spread and risks of infectious diseases.

8.      Due to Le Soleil's prior health policies, we knew that we would be able to send A.B. to a daycare that was patronized only by other families that shared the same commitment to promoting the health and safety of Le Soleil's staff and the children in their care.

DECLARATION OF JESSICA DUVALL - 2

9.      If it were not for Le Soleil's no-exception vaccine policy, it is very likely that we would not have selected Le Soleil to care for A.B. while we were at work or school.

10.      In August, Jeff and I had our second child. Although I am still on maternity leave until January of next year, we have begun taking steps to obtain childcare for him.

11.      It is our intention to send R.B. to Le Soleil, like we did with his brother. However, as a direct result of the Idaho Medical Freedom Act (the "IMFA"), we are unwilling to send R.B. to Le Soleil or any other daycare until he is old enough to receive all of his initial vaccinations.

12.      Of particular concern is the current outbreak of measles. Due to measles' extremely high level of contagiousness, and the inability for children under 12 months to receive the vaccine, we will not risk R.B.'s health by sending him to a daycare that can no longer provide the benefits of herd immunity by requiring all students to receive age-appropriate vaccinations.

13.      Because of the IMFA we have been forced to obtain alternative childcare for R.B., which we will need to maintain for longer than we would desire if Le Soleil were still able to implement the same policies that it had when A.B. attended.

14.      Our plan was to utilize a nanny-share with one other family for R.B., which we are only willing to do because we know that all the members in that family, including their older children, have received all their age-appropriate vaccinations.

15.      However, that option is no longer viable. We have attempted to find an individual nanny for R.B. until he is old enough to receive his vaccinations, but we were unable to find a nanny within our financial means.

16.      For this reason, the only option available to us at this time is to keep R.B. at home with us while Jeff and I alternate caring for him. This decision, however, creates significant hardships and is not the choice we would make but for the IMFA's restrictions on daycares. While

DECLARATION OF JESSICA DUVALL - 3

it is impossible to quantify and identify all the burdens this decision will create, this is specifically challenging because (1) Jeff is currently building his practice and skills as a recent graduate and certified occupational therapist—this decision will certainly impede his progress and process in doing so; (2) both Jeff and I already have to spend a significant amount of our "free" time working, which will only be further exacerbated by this decision, and (3) both Jeff and I will end up earning less money from our jobs due to the need to decrease the hours we can work, which will create additional challenges in our daily lives and family planning.

17.     Further, while the health-related advantages of keeping R.B. at home in our care are paramount at this stage of R.B.'s life, we still believe that Le Soleil's curriculum, including its development-based education, language immersion, and trained staff, is ultimately the best forum for R.B.'s socialization and educational development.

18.     In fact, Le Soleil offers advantages for R.B. that neither my husband nor I can provide while caring for him full-time.

19.     The IMFA is not only infringing on our ability to have R.B. taken care of with children and families that share our belief in the importance of public health—specifically by requiring age-appropriate vaccinations and implementing reasonable illness prevention policies—but it has affected our ability to associate with that group outside of Le Soliel as well.

20.     Recently, Jeff and I hosted a party for A.B.'s third birthday. Most of the individuals in attendance were Le Soleil families. Based on our understanding of those families' shared belief in Le Soleil's vaccination policy, we were able to have R.B. at the party. If it were not for our shared beliefs with the parents who send their children to Le Soleil, we would not have felt comfortable allowing A.B.'s daycare friends and their families to attend.

DECLARATION OF JESSICA DUVALL - 4

I declare under penalty of perjury and the laws of the State of Idaho that the foregoing is true and correct.

DATED:    December 11, 2025

/s/ *Jessica Duvall*
Jessica Duvall

DECLARATION OF JESSICA DUVALL - 5