RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

BRIAN V. CHURCH, ISB # 9391
Lead Deputy Attorney General
AARON M. GREEN, ISB #12397
Deputy Attorney General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov
aaron.green@ag.idaho.gov

*Attorneys for Defendant*
*Raúl R. Labrador in his official*
*capacity as Attorney General*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LE SOLEIL CHILD CARE LLC, an Idaho limited liability company, JESSICA DUVALL, an individual, LESLIE SEDLACEK, an individual, SAMANTHA TODD, an individual, <br><br> *Plaintiffs*, <br><br> v. <br><br> RAÚL R. LABRADOR, in his official capacity as the Attorney General for the State of Idaho, JAN BENNET, in her official capacity as Prosecuting Attorney for Ada County, <br><br> *Defendants*. | Case No. 1:25-cv-00695-AKB <br><br> **MEMORANDUM IN SUPPORT OF ATTORNEY GENERAL RAÚL R. LABRADOR'S MOTION TO DISMISS** |

**INTRODUCTION**

The State of Idaho wants daycares in this State to serve the public, without regard to the individual choices parents make concerning the medical treatments that these parents are, or are not, willing to have their children undergo. For this reason, among others, the Legislature passed the Idaho Medical Freedom Act, which prohibits daycares from erecting those barriers, and ensuring parents have all options open to them. Some people may disagree with that policy choice, but it is rationally related to the State's desire that *all* daycares be open to *all* parents who are seeking such accommodations for their children. Policy disagreements about whether daycares should be allowed to be more restrictive in what prerequisites they require belong to the Idaho Legislature, not federal courts—no matter how "unscientific" or "illogical" Plaintiffs perceive the Legislature's judgment to be. *Raidoo v. Moylan*, 75 F.4th 1115, 1121 (9th Cir. 2023) (quoting *Metropolis Theater Co. v. City of Chicago*, 228 U.S. 61, 69–70 (1913)). This case is a policy argument brought in the wrong forum, and the remaining arguments that Plaintiffs bring against this statute fall equally flat.

Among other issues, Plaintiffs argue that certain terms used in the statute are unconstitutionally vague and they offer frivolous constructions of the statute in support of that claim. In a word, a "medical" intervention is exactly that: an intervention relating to the medical profession. Hyperbolic assertions that the law bars handwashing or sending sick children home are not remotely reasonable reads of the statute. Plaintiffs also bring a *Lochner*-era[1] substantive due process claim in various guises: duplicative policy arguments, as a parents' rights claim, and as a free association claim, all in an effort to elevate the standard of review. This gambit fails. Parents'

---

[1] *Lochner v. New York* being the long "discredited" example of Supreme Court "freewheeling judicial policymaking" in the early-1900s, striking down health, safety and welfare legislation passed by states. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 240 (2022).

rights claims do not extend to the administrative regulation of daycares, and Plaintiffs' associational rights don't apply to a purely commercial transaction with a daycare. Other issues of state law or declaratory relief as a standalone claim also fail.

Ultimately, daycares, like any other form of economic activity, are subject to health, safety and welfare regulation by the Legislature in what it (not Plaintiffs) deems to be the public interest. Plaintiffs can go to the Legislature with their arguments. Until the Legislature agrees with Plaintiffs, they cannot require *other parents* to make health care decisions to attend any specific daycare in Idaho. The Complaint must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

The Idaho Medical Freedom Act is a comprehensive guarantee that Idahoans will not face barriers to entry for commercial or government service on the basis of a medical treatment they choose to undergo or forego. *See generally* Idaho Code § 73-503. It prohibits, with exceptions, the denial of admission, service, or sale of a product based on the receipt or non-receipt of a "medical intervention." Idaho Code § 73-503(1); *but see* Idaho Code § 73-503(5)-(6). It generally prohibits requiring a "medical intervention" as a prerequisite for employment. Idaho Code § 73-503(2). It generally prohibits ticket issuers from requiring a "medical intervention" as a condition of entry. Idaho Code § 73-503(3). The same for schools, daycares,[2] and government entities, as a condition for public benefits. Idaho Code § 73-503(4)-(6). Wage and salary distinctions based on "medical interventions" are similarly prohibited. Idaho Code § 73-503 (7). Exceptions include federal law requirements and traditional and excepted industry standards. Idaho Code § 73-503 (5)-(6), (9). These prohibitions may be enforced only by injunctive relief. Idaho Code § 73-503 (10).

---

[2] As business entities regulated under Section 73-503(1) and defined in Section 73-502(1).

A "medical intervention" under the law is: "a medical procedure, treatment, device, drug, injection, medication, or medical action taken to diagnose, prevent, or cure a disease or alter the health or biological function of a person." Idaho Code § 73-502(3).

The Act was signed by Governor Little on April 4, 2025, with an effective date of July 1, 2025, codified at Idaho Code § 73-501 et seq. Over five months after the Act's effective date, on December 11, 2025, Plaintiffs, who consist of a daycare called Le Soleil and three parents who either currently (or used to) send their children to Le Soleil, sued to enjoin the law.

### LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Granting a Rule 12(b)(6) motion is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

A motion to dismiss under Rule 12(b)(1) also takes the facts stated in the complaint stated to be true. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011). Standing is a question properly raised under Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Plaintiffs lack Article III standing if the allegations in their complaint are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Plaintiffs bear the burden of showing standing by clearly alleging "facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

Sovereign immunity arguments are generally considered jurisdictional, *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011), but courts have held that they may be raised under Rule 12(b)(1) or (b)(6); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

This Court, in construing Idaho state statutes, will apply Idaho state canons of construction. *Reges v. Cauce*, ___ F.4th ____, 2025 WL 3685613, at *18 (9th Cir. 2025) (citation omitted). This "begins with an examination of the literal words of a statute, [giving] words their plain, usual, and ordinary meanings." *Labrador v. Idaho State Bd. of Educ.*, 174 Idaho 790, 814, 560 P.3d 533, 557 (2024) (citation and internal quotation marks omitted). If the law is susceptible to more than one reasonable interpretation, the statute is ambiguous, and the Court will apply Idaho's canons of construction. *Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 421, 247 P.3d 644, 648 (2011) (citation omitted). These canons, among other things, require the Court "whenever possible, [to] construe a statute so as to achieve a constitutional result." *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 68, 28 P.3d 1006, 1011 (2001).

Plaintiffs seek to enjoin any enforcement of the Idaho Medical Freedom Act from being applied "in any manner whatsoever," Dkt. 1 at 25, and that decision "comes at a cost." *Moody v. NetChoice LLC*, 603 U.S. 707, 723 (2024). It means they must meet the facial challenge standards for constitutional challenges. A plaintiff must "establish that no set of circumstances exist under which the law would be valid" or that the law "lacks a plainly legitimate sweep." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

### ARGUMENT

The Parent Plaintiffs lack standing and may be dismissed pursuant to Rule 12(b)(1). All Plaintiffs' state law claims are barred under the Eleventh Amendment. And all of Plaintiffs' claims are legally insufficient and therefore must be dismissed under Rule 12(b)(6).

### I.    Parent Plaintiffs lack standing.

Plaintiffs in this action include three parents. Jessica Duvall plans to send her younger child to Le Soleil for daycare, while Leslie Sedlacek and Samantha Todd each have a child who currently

attend Le Soleil. Dkt. 1 ¶¶ 2–4. But the parents lack standing under pre-enforcement standards because none of their pled conduct is regulated, and thus they lack an injury-in-fact.

Standing requires pleading three elements: a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (ellipsis omitted). For pre-enforcement standing, showing an injury in fact requires pleading: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest" (2) "future conduct [that] is 'arguably proscribed by the statute'" and (3) that "the threat of future enforcement" of the challenged law is "substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014) (first and second quotes quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)) (cleaned up).

Parent Plaintiffs fail at the injury-in-fact prong of standing because they are attacking a statute that does not regulate them. None of their current or future conduct is "arguably proscribed" by the Medical Freedom Act, which does not regulate the actions of individuals. *See generally* Idaho Code § 73-503 (regulating business entities, schools, ticket issuers, and governments). None of the parents (apparently) operate daycares, and they either plan to send their children to Le Soleil, or they already do, notwithstanding the fact that the Medical Freedom Act has been in effect since July 1, 2025. So, not only does the act itself not require anything of parents, but the Parent Plaintiffs plead that they are continuing to choose Le Soleil, and making free daycare decisions.

The closest Parent Plaintiffs come to articulating any harm is their allegation that they are "forc[ed]" to "place their infants and children in environments where they will be exposed to

unvaccinated classmates." Dkt. 1 ¶¶ 87, 88. First, this isn't true—no one is "forced" by law to place their children in daycare in the same way that parents are traditionally obligated to send their kids to school. Keeping kids home, with relatives, and any number of alternative arrangements are perfectly licit. To the extent Plaintiffs claim a harm based on their voluntary decision to send their children to a business regulated by the Act, that is the type of "manufacture[d]" injury that cannot create standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013). But even assuming legal compulsion to attend daycare, Plaintiff Parents would still lack pre-enforcement standing because the Act does not regulate them—it regulates businesses registered in the state of Idaho.

* * *

Parents bring this action, not in vindication of their constitutional rights, but to vindicate access to a commercial service that is regulated in the way they want it to be regulated. They lack standing to do so. Parents may associate with each other when and how they choose; parents may place their children in a daycare or school of their choice—or choose not to use a daycare. The Idaho Medical Freedom Act simply does not regulate these decisions.

Because the Parent Plaintiffs lack an injury-in-fact, and therefore lack pre-enforcement standing, they and the claims that only they bring (Counts IV, V, and VI) must be dismissed. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (noting standing required for all claims and relief).

## II. Plaintiffs' facial challenge is defective for failing to challenge all applications of the Act.

Plaintiffs bring a facial challenge to the Idaho Medical Freedom Act, given that their sought declaratory and injunctive relief seeks to bar *any* enforcement of the act. Dkt. 1 at 25 ("any manner whatsoever"); *see Bucklew v. Precythe*, 587 U.S. 119, 138-39 (2019). Plaintiffs don't say a word about the invalidity of the law as applied to ticket sellers, schools, or other businesses. Even though they denominate certain challenges as "as applied," their requested relief requires them to

demonstrate that there is no constitutional application of the statute. *Salerno*, *supra*. Because they don't try to do that, the Complaint must be dismissed.

**III. Plaintiffs' state law and state constitution claims are barred by the 11th Amendment.**

Plaintiffs bring several claims against Defendants under Idaho statutory and constitutional law, namely Counts II, V, VI and a component of VIII. Dkt. 1 at 17, 20–23, 24–25 (seeking declaration as to state law claim). These are barred by the Eleventh Amendment because they are state claims brought against a non-consenting state in federal court. *Freeman v. Oakland Unif. Sch. Dist.*, 179 F.3d 846, 846–47 (9th Cir. 1999) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)). The "entire basis" for exceptions to sovereign immunity like *Ex Parte Young* "disappears" when the basis of the claim is state, rather than federal, law, and there is no federal supremacy interest that is being vindicated. *Pennhurst*, 465 U.S. at 106. Thus, "[a] federal court may not grant injunctive relief against state officials on the basis of state law, when those officials are sued in their official capacity." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013) (quoting *Pennhurst*, 465 U.S. at 106) (cleaned up). Idaho has not expressly waived its sovereign immunity in federal courts claims under the Idaho Constitution or Idaho Parental Rights Act. Idaho (and its officers) therefore retain immunity, including over claims brought purportedly under supplemental jurisdiction. *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–42 (2002). Defendant asserts sovereign immunity regarding these claims, and they must be dismissed.

**IV. Counts I and II fail because the statute is rationally related to the legitimate state interest of prohibiting artificial barriers to receiving services like daycare.**

Plaintiffs' first two claims are raised by Le Soleil, arguing that the Act violates the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of Article I, Section 13

of the Idaho Constitution because it allegedly interferes with Le Soleil's "right to operate its business." Dkt. 1 ¶ 93. These claims are deficient as a matter of law.[3]

The Fourteenth Amendment provides that a person may not be deprived of "life, liberty, or property" without "due process of law." The Supreme Court has held that a law with a rational relation with a legitimate government interest, i.e., a rational basis, satisfies the Fourteenth Amendment's due process requirements as long as no fundamental right is implicated. *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391 (1937); *see also Dobbs*, 597 U.S. at 301 (applying rational basis review to health law challenged on substantive due process grounds).

Here, Le Soleil concedes that its due process challenges require rational basis review. Dkt. 1 ¶¶ 98, 107. Sensibly so. "There was a time when the Due Process Clause was used by [courts] to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy." *Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) (discussing *e.g.*, *Lochner v. New York*, 198 U.S. 45 (1905)). "The doctrine that prevailed in *Lochner* . . . and like cases—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded. [Courts] have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." *Ferguson*, 372 U.S. at 730.

Rational basis today is a "light burden" for the government to meet. *Erotic Serv. Provider Legal Educ. and Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018). Indeed, "almost all laws" will pass. *District of Columbia v. Heller*, 554 U.S. 570, 628 n.27 (2008). Analyzing a statute

---

[3] As explained, because the Court cannot reach the State law claims, it has no occasion to decide their merits of Count II. But, it is worth noting that Plaintiffs concede that the analysis is effectively the same under both the federal and Idaho Constitution. Dkt. 2-1 at 15 n.2; *see also Schevers v. State*, 129 Idaho 573, 577, 930 P.2d 603, 607 (1996).

under rational basis takes two steps: "First, [courts] must determine whether the challenged law has a legitimate purpose. Second, we address whether the challenged law promotes that purpose." *Gascon*, 880 F.3d at 457 (citation omitted). "Further, under rational basis review, the burden is on Plaintiffs to show the government did not act legitimately." *Excel Fitness Fair Oaks, LLC v. Newsom*, No. 2:20-cv-02153-JAM-CKD, 2021 WL 795670, at *6 (E.D. Cal. Mar. 2, 2021) (citing *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1994)). "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *City of Dallas v. Stranglin*, 490 U.S. 19, 27 (1989) (citation omitted). "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

As discussed in the introduction, the statute is rationally related to the legitimate objective of affording parents expanded access to choose the school or daycare of their choice without regard to the medical decisions they have made for their child.[4] And a law that prohibits exclusions from daycare based on medical treatments that children must undergo to be served is rationally related to that objective. This is sufficient to dispense with Le Soleil's due process challenge.

Plaintiffs may count this objective and method as unwise or unscientific—and this is irrelevant. After a rational basis is identified under the appropriate standard of review, Plaintiffs' due process challenge consists of nothing but reheated *Lochner*-era leftovers. They point to (alleged) policy problems they believe exist with the Medical Freedom Act: that it keeps a daycare

---

[4] The Court, of course, is not limited to this objective. Rational basis may be based on "plausible" reasons for the Legislature's action—i.e., if the Court can imagine reasons for the enactment, even if they are not the objectives put forward by the Defendants, the Court's "inquiry is at an end" and the statute passes rational basis. *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980).

from excluding a child with a contagious illness or taking common-sense precautions, or that it allows unvaccinated children access to daycares who would rather exclude those children. Put aside that these allegations are, in the main, incorrect as a matter of statutory interpretation—excluding a kid because he has a fever does not exclude him "because [he] . . . has not received or used a medical intervention," Idaho Code § 73-503(1), but because he is known to be sick—these allegations can't show that the law lacks a rational basis because they are the kinds of policy objections over which the Legislature has the police power to weigh. *See Phillips v. City of New York*, 775 F.3d 538, 542–43 (2d Cir. 2015) (per curiam). Counts I and II must be dismissed.

### V.   Count III fails because the statute is not vague.

Plaintiffs next claim that the terms "medical intervention," "medical action," and "alter the health or biological function of a person" are unconstitutionally vague. This argument is meritless.

The Due Process Clause of the Fourteenth Amendment proscribes statutes that are impermissibly vague. *Grayned v. City of Rockford*, 408 U.S. 104, 107–08 (1972). "A statute is unconstitutionally vague on its face if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

The Court starts with a presumption that a law is not vague. *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (citation omitted). "[D]ue process does not require 'impossible standards' of clarity." *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (citation omitted). A court does not, considering vagueness, "parse the statute as grammarians or treat it as an abstract exercise in lexicography." *Beauharnais v. People of Ill.*, 343 U.S. 250, 253 (1952). "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hum. Life of*

*Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010) (citations and internal quotation marks omitted). Even a statute with "awkward construction" will pass muster if it is "subject 'to an imprecise but comprehensible normative standard.'" *Matsumoto v. Labrador*, 122 F.4th 787, 805 (9th Cir. 2024) (citing *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1020 (9th Cir. 2013)).

The Medical Freedom Act is not vague and does specify a comprehensible standard of behavior—certainly with respect to Le Soleil.[5] *See United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006) (holding vagueness challenges not implicating First Amendment violations must be examined for vagueness as-applied) (collecting cases). All of the claimed points of vagueness are modified by the word "medical." This Court, following Idaho canons, begins with the plain meaning of the words at issue. *Idaho St. Bd. of Educ.*, 174 Idaho at 814, 560 P.3d at 557. The word "medical" means "of, relating to, or concerned with physicians or the practice of medicine." *Medical*, Merriam-Webster Online Dictionary.[6] Consequently, unless an "intervention," "action," or other thing that "alters the health or biological function of a person" is "medical" in the sense of relating to physicians or the practice of medicine, then the statute does not regulate it. The absurd potential constructions offered by the complaint fall away: excluding a child who is apparently ill does not require a doctor, or a treatment, or injection, or anything else required by the statute, nor does it involve the practice of medicine. Dkt. 1 ¶ 33. The same is true for excluding a sick employee until they are well. *Id.* ¶ 34. In fact, neither situation should address the scope of the supposedly ambiguous terms at all since excluding a person because he is presently sick is not the same as excluding a person because he refused a medical intervention. And handwashing is not a medical matter at all—it's a matter of mere hygiene.

---

[5] The only Plaintiff bringing a vagueness claim. Dkt. 1 at 18.

[6] *Medical*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/medical (last accessed, January 20, 2026).

Even if one could debate the outer bounds of medical practice, there is a core of conduct that Plaintiffs are on notice that they cannot require prior to serving parents and students.

\* \* \*

Simply put, a daycare cannot require a parent to take their child to a doctor for a treatment as a condition to entry. A daycare cannot require an injection (i.e., a vaccine) or a specific kind of medication either. But a daycare can send a sick kid home, require a child with headlice to stay home,[7] and require basic hygiene, such as handwashing. A daycare can also feed a child, let a child out for playground activity, or do any number of things which conceivably "alter the health or biological function of a person" because such things are not *medical* interventions. None of these things requires the services of a doctor, or a specific medication, injection or treatment, thus these acts are not covered. More to the point, Plaintiffs can tell what this act is designed to cover: acts that relate to the medical profession, not basic hygiene. This plain text analysis ends the vagueness argument and demonstrates how ridiculous Plaintiffs' 'parade of horribles' is. Any statute can appear vague when definitions are simply ignored, but recourse to a dictionary and basic common sense requires dismissal of Count III.

## VI. Counts IV and V fail because the statute does not interfere in the rights of parents to raise their children.

The Plaintiff Parents next argue that their federal and state constitutional rights[8] to the care, custody and control of children are burdened by making daycare available to parents regardless of the choices they make for their children's medical care. Not so.

---

[7] To illustrate this point, the daycare could require the child to stay home until there are no more nits or lice but could not require the parent to treat the child with any particular medical intervention to treat the headlice before returning to the daycare.

[8] For the reasons discussed above, Count V is barred under the Eleventh Amendment. *Supra* at 7–8. But even if the Court were to reach the State right to parent, Plaintiffs point to no distinction between their federal and state law parental-right claims that warrants a different analysis.

### A.    Federal parental rights are not burdened.

Plaintiffs fail to state a substantive due process claim that their parental rights are burdened by the Act. It is certainly true that the right to care, custody and control of one's children is fundamental, and therefore protected by the substantive due process doctrine under the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (plurality opinion) (discussing *e.g.*, *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) and *Pierce v. Soc. of Sisters*, 268 U.S. 510, 534–35 (1925)). But while this right includes the right to direct, for instance, education (*Meyer/Pierce*) and medical decision making (*id.* discussing *Prince v. Massachusetts*, 321 U.S. 158, 164 (1944)) of one's own children, this right "is not without limitations." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005). There is no constitutional right to daycare, and no right to any specific regime of daycare regulation. As the Ninth Circuit has held, parents generally lack "constitutionally protected rights to direct school administration more generally." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020). Parent Plaintiffs' parental rights claims fail for two overarching reasons.

### 1.    *Parental rights aren't implicated by the statute.*

For starters, the rights identified by Parent Plaintiffs simply aren't implicated by regulation *of someone else*. The right to follow medical advice and seek medical care (Dkt. 1 ¶ 122) is not implicated by the Medical Freedom Act—it doesn't compel or prevent parents from doing anything with respect to their children's medical care or from following medical advice. *See e.g.*, *Mirabelli v. Bonta*, No. 25-8056, 2026 WL 44874, at *3 (9th Cir. Jan. 5, 2026) (per curiam) (citing *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 350 (1st Cir. 2025)).

If parents feel they need to vaccinate their own children before the children attend daycare, they can do that. If they don't, they are not required to. The law says nothing about that choice, except that *a daycare* cannot condition service to parents and children on a parent making a specific choice. Plaintiffs' fundamental right to parent *their* children surely doesn't allow them to require

*other parents* to make specific health care choices before signing up for daycare. *See L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 475 (6th Cir. 2023), aff'd 605 U.S. 495 (2025) ("A parent's right to make decisions for a child does not sweep more broadly than an adult's right to make decisions for herself."). Plaintiffs may believe all children should receive certain medical interventions as a matter of policy, but they cannot use their own parental right to override the rights of other parents and children.

The same is true with respect to the choice to direct a child's upbringing. Dkt. 1 ¶ 122. The Medical Freedom Act does not instruct parents how to raise their children, it regulates daycares and other business entities. It does not stop parents from choosing a particular daycare that offers a curriculum of their choice, or from finding other means of child-care altogether. It only prevents daycares from excluding parents and children on the basis of their own medical decision-making.

2. ***There is no substantive due process right to commercial daycare as a component parental right.***

Furthermore, the scope of parental rights are not reasoned in the abstract—rather, the question under substantive due process is whether the particular component of the claimed unenumerated right is "deeply rooted in . . . history and tradition." *Dobbs*, 597 U.S. at 237. Plaintiffs must give "a careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Plaintiffs identify no case (whether in the Complaint or in their Motion for Preliminary Injunction) suggesting that the right to direct the education or upbringing of children extends in any sense to commercial daycare.[9]

---

[9] A daycare, responsible for "supervision of and care for children" is a different service than that provided by a school: "an institution for the teaching of children." *Day care*, Merriam Webster Online Dictionary; and *School*, Merriam Webster Online Dictionary. As noted above, while most states have required children to be sent to school of some kind for well over a century, no similar compulsion has existed for daycare. *See Meyer*, 262 U.S. at 400.

"[T]he Supreme Court has cautioned that we must be 'reluctant to expand the concept of substantive due process,' [*Glucksberg*, 521 U.S. at 720], to avoid usurping 'authority that the Constitution entrusts to the people's elected representatives,' *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239–40 (2022)." *Mirabelli*, 2026 WL 44874, at *3. While there does exist a right to choose between public or private education (*Pierce*, 268 U.S. at 534–35), which includes the right to choose instruction in other languages (*Meyer*, 262 U.S. at 400–01), and the right to make medical decisions for one's own child (*Parham*, 442 U.S. at 602), these are not the precise rights implicated by the allegations in the complaint. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085–86 (9th Cir. 2015) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

To determine whether a proposed right is fundamental, "the Court has long asked whether the right is 'deeply rooted in [our] history and tradition' and whether it is essential to our Nation's 'scheme of ordered liberty.'" *Dobbs*, 597 U.S. 215, 237–38 (citations omitted). Neither the Supreme Court nor the Ninth Circuit has held that a parent has the fundamental right to daycare generally, or choosing a daycare of their choice, let alone a right to daycare regulated in a specific way. The Ninth Circuit has directly considered whether the regulation of daycares implicates the rights of parents, albeit in a memorandum decision. In *Brown v. Dunbar*, 376 Fed. App'x 786, 787–88 (9th Cir. 2010) (mem.), the Court upheld dismissal of a claim that the right to parent extended "to a right to patronize a daycare provider," which had lost its license. As the Ninth Circuit noted parenthetically, analogizing to a Supreme Court case concerning nursing homes, such commercial regulation affects the ultimate consumer of services "only indirectly." *Id.* (citing *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 788 (1980)). This makes sense; a parent generally does not have the right to a good or service just because they plan to use that good or service in the upbringing of their child, and it goes without saying such a right is nowhere in the Constitution's text.

As in *Brown*, this Court should analogize from other failed claims to substantive due process rights to services, such as a purported right to a healthcare provider or mental health professional with specific training, which the Ninth Circuit has expressly rejected. *Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000) (citing *Mitchell v. Clayton*, 995 F.2d 772, 775 (7th Cir. 1993)). Just as the state is free to regulate the healthcare industry and related services, states are free to regulate the marketplace of daycares.

Plaintiffs offer nothing in the complaint to suggest that an unenumerated fundamental right to access daycare generally, or a more specific right to daycare, exists. This dooms the claim. But even if one assumes that the right to parent in education includes daycare, the closest authority addressing whether states may regulate health policy at daycare falls against Plaintiffs.

A preeminent case, limiting the scope of "*Meyer* and its progeny"[10] is *Runyon v. McCrary*, 427 U.S. 160, 176–77 (1976). In that case, the Supreme Court considered the application of 42 U.S.C. § 1981 as applied to a private 'segregation academy' which refused to admit African-American children. The schools protested that the application of the statute to bar parents from sending their children to a (segregated) school of their choice, violated those parents' rights under *Meyer*, *Pierce*, and subsequent cases. *Id.* The Court was clear, "[n]o challenge is made to the petitioner schools' right to operate or the right of parents to send their children to a particular private school rather than a public school. Nor do these cases involve a challenge to the subject matter which is taught at any private school." The schools being free to teach what they wished, and parents free to send their children to a school teaching a desired curriculum, "*Meyer* and its progeny entitle [parents] to no more." *Id.* This limitation on the scope of *Meyer* etc., dooms

---

[10] To recap: those cases establishing a right to choose the forum of a child's education and the instruction of a child in a foreign language.

Plaintiffs claims. They want much more than what is offered by these cases—not only the right to send their kids to a daycare of their choice, but the right to a specific health environment that would impose their parental ideas on the parents and children of every other parent who might want to utilize the services of Le Soleil. No such constitutional right exists.

A line of more recent cases is even more factually on-point. In *Milford Christian Church v. Russell-Tucker*, No. 3:23-CV-304 (VAB), 2023 WL 8358016, at *17 (D. Conn. Dec. 1, 2023), the District of Connecticut dismissed a complaint by a church daycare and preschool arguing that a Connecticut law requiring children attending the daycare and preschool to be vaccinated abridged the rights of parents who sought to place their children in a school that did not require children to be vaccinated. *Id.* (citing *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130 (2d Cir. 2023)). Applying this principle here, if a state can require that *all* daycares require vaccinations without implicating parental rights, a state can require that *none* do so. This regulation does not impact the medical care that parents can obtain for their children; they remain free to seek whatever medical treatment they deem expedient. *See Parham v. J.R.*, 442 U.S. 584, 602 (1979). What Parent Plaintiffs cannot do is require the state to adopt a regime that would raise barriers to childcare for *other* parents based on *other* parents' medical choices. Counts IV and V fail.

**VII. Count VI fails because one legislature cannot bind a future legislature.**

Count VI claims that the Medical Freedom Act violates another Idaho statute, namely, the Idaho Parental Rights Act. Dkt. 1 at 21–22 (citing Idaho Code §§ 32-1010 et seq.). This fails for two reasons, beyond the fact that the Court lacks jurisdiction to consider the claim. *Supra* at II.

*First*, "[this Court] may quickly dismiss [Plaintiffs'] argument as meritless." *Planned Parenthood Gr. Nw. v. State*, 171 Idaho 374, 453, 522 P.3d 1132, 1211 (2023). "[N]o present legislature can bind a future legislature through ordinary legislation." *Id.* (citing *State v. Gallet*, 36 Idaho 178, 179, 209 P. 723, 724 (1922) and quoting in parenthetical *Fletcher v. Peck*, 10 U.S. 87

(1810) (John Marshall, C.J.)). Even if the Court assumes that the Medical Freedom Act directly and conspicuously conflicted with the Parental Rights Act, the "latest expression of the legislative intent [will] prevail"—in this case, the 2023 Medical Freedom Act will prevail over the 2015 Parental Rights Act. *Id.* (quoting in parenthetical *Gallet*, *supra*). A conflict between statutes is no basis for declaring a statute invalid in Idaho. Count VI must be dismissed.

Further, the Idaho Parental Rights Act cannot apply to acts of the Legislature because Section 32-1010(7) states that it shall not "be construed as altering the established presumption in favor of the constitutionality of statutes and regulations." But application of the Idaho Parental Rights Act to a statute would do exactly that. *See* Idaho Code § 32-1013(1). Application of strict scrutiny, as Section 32-1013 would require, means "the presumption in favor of constitutionality is not applicable. The state must show a compelling interest to vindicate the law. If, however, the law does not infringe a fundamental constitutional right, the rational basis [test] is applicable—the presumption is then in favor of the state." *Bradbury*, 136 Idaho at 69, 28 P.3d at 1012. Because the Idaho Parental Rights Act specifically preserves this presumption for statutes, it cannot apply.

*Second*, the Idaho Parental Rights Act does not apply because—again—the Medical Freedom Act does not restrict or interfere with any right held by parents to direct the care, custody and control of their children. It does not regulate parents, only daycares.

## VIII. Count VII fails because the statute regulates economic activity, not expressive conduct.

Parent Plaintiffs' claim that their associational rights are implicated fails for three reasons. The freedom of association is implicitly guaranteed by the First Amendment to the federal constitution, "'for the purpose of engaging in those activities' that [the First Amendment] explicitly protects." *Crowe v. Or. State Bar*, 112 F.4th 1218, 1233 (9th Cir. 2024) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)). "But the freedom of association (including the freedom not to

associate) does not protect all 'associations.' Because the freedom of association is a corollary to other First Amendment rights, it only protects 'associations to the extent that they are expressive.'" *Id.* (quoting *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1194 (9th Cir. 1988)).

*First*, as discussed *supra*, the Idaho Medical Freedom Act does not regulate the actions of parents, it regulates business entities including daycares. Parents can associate with whoever they please to advance any message they want; and can exclude others when doing so.

*Second*, laws that regulate businesses do not burden the associational rights of persons who want to patronize those businesses, or businesses themselves. The Ninth Circuit's memorandum decision in *Dunbar* expressly applies this principle to daycare regulation. 376 Fed. App'x at 787–88 (citing *Cal. Bd. of Psychology*, 228 F.3d at 1050). A longstanding line of caselaw supports this general principle. *U.S. Jaycees*, 468 U.S. 609, states that regulating a public accommodation (as the Jaycees were held to be) does not infringe on the right to associate. As in any other regulation requiring patrons of every race or religion to be served, a law regulating every patron of a daycare to be served regardless of medical treatment does not regulate associations meant to promote a message—it regulates commerce. *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 12–14 (1988).

There's a more fundamental problem. Plaintiffs' patronage of Le Soleil (which they continue to do, unimpeded) is not expressive at all—daycare is a "primarily commercial enterprise." *IDK, Inc.*, 836 F.2d at 1195 (discussing *Jaycees*, *supra* (opinion of O'Connor, J. concurring in part and concurring in judgment)). Le Soleil is a business, Dkt. 1 ¶ 19, "not a private club," *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995), and the relationship between a daycare and a parent lasts "only as long as the client is willing to pay the fee." *Cal. Bd. of Psychology*, 228 F.3d at 1050. Nor is there anything expressive in paying a fee to send a child

to a particular daycare. "[T]he mere fact that it takes two to transact does not mean that every act of commerce falls in those specially protected categories." *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 406 (5th Cir. 2025) (citing *New York State Club Ass'n*, 487 U.S. 1, 12–14 (1988) and *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 458–59 (1978)). No facts in the Complaint, apart from the conclusory allegation that this patronage is expressive, *see* Dkt. 1 ¶¶ 152–54, indicates that the transactions proposed here are anything more than ordinary commerce. Plaintiffs' inability to transact for *exactly* the service they'd like to provide or receive is not a First Amendment claim.

Plaintiffs enjoy no greater right to associate by collectively patronizing a daycare than any other business. To the extent they want to associate to promote a message, nobody is stopping them, least of all Defendants in this case. Because they are seeking the right to patronize a particular kind of business, not to associate to promote any form of message, no right of expressive association is burdened here.

## IX. Count VIII fails to the extent that it is a standalone request for relief.

Because the above counts fail, the claim for declaratory relief must be dismissed. "Declaratory relief is not a standalone claim." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 861 (N.D. Cal. 2023); *see also City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). Because Plaintiffs haven't stated a claim under any of the other counts of their complaint, this count must also be dismissed.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

DATED: January 30, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Aaron M. Green*
AARON M. GREEN
Deputy Attorney General

*Attorney for Defendant*
*Raúl R. Labrador in his official*
*capacity as Attorney General*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on January 30, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Andrea S. Carone<br>andrea.carone@stoel.com<br><br>Wendy J. Olson<br>wendy.olson@stoel.com<br><br>E. Anders Pedersen<br>anders.pedersen@stoel.com<br><br>Audrey G. Scholer<br>audrey.scholer@stoel.com | |
| *Attorneys for Plaintiffs* | |
| Dayton P. Reed<br>Deputy Prosecuting Attorney<br>Civil Division<br>Email: civilpafiles@adacounty.id.gov | |
| *Attorney for Jan M. Bennetts, Ada County Prosecuting Attorney* | |

/s/ *Aaron M. Green*
AARON M. GREEN